704 So.2d 825 (1997)
SUCCESSION OF Rudolph F. BECKER, III.
No. 96-CA-2169.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 1997.
Rehearing Denied February 17, 1998.
*826 William L. Von Hoene, Jr., New Orleans, for Appellants William F. Finegan and Patricia McGee Becker.
Vincent T. LoCoco, Henrik A. Pontoppidan, Vincent B. LoCoco, New Orleans, for Appellees Diane Catherine Becker and Pamela McGinn Becker-Koch.
Before CIACCIO, JONES and WALTZER, JJ.
CIACCIO, Judge.
Appellants, William F. Finegan, the executor of the estate of the late Judge Rudolph F. Becker, III, and Patricia McGee Becker, the decedent's surviving spouse, appeal from a trial court judgment in favor of Diane Catherine Becker and Pamela McGinn Becker-Koch, the adult children and forced heirs of the decedent. The trial court judgment requires Mrs. Becker to furnish security in the amount of $157,371.88 and additional security, if needed, pursuant to LSA-C.C. art. 890.
Judge Becker died on August 29, 1991. He was married twice, first to Rosemary McGinn, of which marriage two children were born, Diane and Pamela, appellees herein. The first marriage ended in divorce. Judge Becker subsequently married Patricia McGee. No children were born of this marriage.
Judge Becker left a last will and testament in olographic form dated April 13, 1991, which was probated on September 24, 1991. In his last will and testament, he left to Mrs. Becker his entire interest in all property acquired during their marriage. Decedent left to his two adult daughters his separate property, particularly, a particular legacy of his interest in a leasehold estate in Gonzales, Louisiana and his interest in the related sublease agreement with Burger King for its outlet in Gonzales. In addition, decedent left to his surviving spouse the lifetime usufruct over the lease and sublease. His testament expressly provided, "I direct that the usufruct of all my property which I leave to my wife be with full seizin and without bond."
On February 9, 1994, the Becker heirs filed a petition to take possession of the legacy of the separate property, in full ownership, without the legacy being burdened by *827 the usufruct in favor of Mrs. Becker. The trial court denied the petition, and this Court affirmed on appeal.[1] On January 10, 1996, the Becker heirs filed a motion to have Mrs. Becker furnish security in the amount of $148,350.17 pursuant to LSA-C. C. art. 890. Following a hearing, the trial judge rendered judgment in favor of the Becker heirs. The trial judge stated in his reasons for judgment:
Pursuant to Louisiana Civil Code Article 890 and Louisiana Code of Civil Procedure Article 3154.1, the forced heirs are entitled to security on the forced portion which must be posted on or before the rendering of the judgment of possession.
In order to determine the amount of security required, a calculation of the forced portion was made by this court. The court finds that the Burger King leasehold interest is a consumable but that it cannot be valued by the capitalization of income method or any other valuation method, and therefore the court finds that the value of the Burger King leasehold interest for purposes of determining the forced portion of the decedent's forced heirs is the sum of all rentals actually receive and to be received by the usufructuary over the life of the leasehold, reduced by the amounts of such rental income paid out on the underlying mortgage.
Accordingly, the valuation of the forced portion is as follows:
The Sworn Descriptive List filed by the executor and Mrs. Patricia Becker on March 25, 1994 discloses that the net assets of the decedent's estate amounted to $122,123.79 on the date of the decedent's death, August 29, 1991. The net amount of $81,543.66, which represents a realtor's appraisal of the Burger King lease less a mortgage balance on the leasehold interest [$138,854.00  $57,310.34], is deducted from the above amount, leaving a net amount of $40,580.13. To this last figure is added one-half of the net proceeds of $143,617.02 or $71,808.51 from the sale after the decedent's death of Highlands, N.C. real estate. The total of $40,580.13 and $71,808.51 is $112,388.64. The daughters' one-half net forced portion or legitime is valued at $56,194.32.
The amount of net money received on the Burger King lease from September 1, 1992 through February 29, 1996 is $101,177.56.
The total of the two above sums of $56,194.32 and $101,177.56 amounts to $157,371.88. This is presently the amount for which Mrs. Patricia Becker is to furnish security.
Although security is ordered with respect to the foregoing amount, the court notes that the amount of the forced portions shall be reduced to the extent that Louisiana inheritance taxes are ultimately advanced out of the succession assets for the benefit of the forced heirs.
Appellants list several issues and assignments of error in their appeal brief, although not all are argued. They argue that the trial judge exceeded the scope of the hearing by making a calculation of the forced portion and determining the existence of an impingement on the legitime and requiring bond for property left to Mrs. Becker in full ownership prior to traversal or amendment of the descriptive list and a reduction of the disposable portion. Appellants further contend the trial judge erred in requiring Mrs. Becker to post a bond pursuant to LSA-C.C. art. 890 because the decedent specifically waived the requirement of bond in his testament. They also contend the trial judge erred in determining that the usufruct granted to Mrs. Becker over the Burger King lease was a consumable. Appellants argue that in the event we find Mrs. Becker is required to post security the amount should be limited to the value of the property subject to the usufruct only and should not be required until the usufructuary has been placed in possession of the property subject to the usufruct.
The first issue we will address is whether the trial judge erred in requiring Mrs. Becker to post security under LSA-C.C. Art. 890 *828 where the testator expressly dispensed with the posting of bond.
At the time of Judge Becker's death, LSA-C.C. art. 890 read as follows:
If the deceased spouse is survived by descendants and shall not have disposed by testament of his share in the community property, the surviving spouse shall have a legal usufruct over so much of that share as may be inherited by the descendants. This usufruct terminates when the surviving spouse contracts another marriage, unless confirmed by testament for life or for a shorter period.
The deceased may by testament grant a usufruct for life or for a shorter period to the surviving spouse over all or part of his separate property.
A usufruct authorized by this Article is to be treated as a legal usufruct and is not an impingement upon legitime.

If the usufruct authorized by this Article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner. [Emphasis ours]
(Acts 1981, No. 919, Sec. 1; Amended by Acts 1982, No. 445, Sec. 1; Acts 1990, No. 1075, Sec. 1, eff. July 27, 1990).
Article 916 of the Civil Code of 1870, the predecessor of LSA-C.C. art. 890, did not authorize a usufruct over community property that was inherited by children of a prior marriage or by illegitimate children, nor did it authorize a usufruct over separate property. When LSA-C.C. art. 890 was originally adopted in 1981 it extended the usufruct of the surviving spouse to all former community property of the deceased, regardless of whether the descendants who succeed to the property are issue of the marriage with the survivor or not. By La. Acts 1982, No. 445, Sec. 1, the legislature amended the law to permit a testator to grant a usufruct to the surviving spouse over separate property, even if the naked ownership of that property is not inherited by issue of the marriage with the survivor. When the law was expanded to permit a testator to grant such a usufruct to a surviving spouse, the last paragraph of LSA-C.C. art. 890 was also added to authorize the naked owner to request security.
LSA-C.C. art. 571 provides the general rule that a usufructuary shall give security "unless security is dispensed with." LSA-C.C.art. 573 provides that "[s]ecurity may be dispensed with by the grantor of the usufruct or by operation of law." On the other hand, LSA-C.C.P. art. 3154.1 expressly provides:
If the former community or separate property of a decedent is burdened with a usufruct in favor of his surviving spouse, successors to that property, other than children of the decedent's marriage with survivor, may request security in accordance with the preceding article in an amount determined by the court as adequate to protect petitioner's interest.
In Succession of Watson, 517 So.2d 276 (La.App. 1st Cir.1987), the deceased left to her surviving spouse the disposable portion of her estate as well as a lifetime usufruct over the forced portion that she bequeathed to descendants in naked ownership. Decedent also named her surviving spouse as executor of her estate and expressly dispensed him of the obligation of furnishing security. The daughter and granddaughter of decedent brought an action to compel the executor of the estate to furnish security. The trial court relying on LSA-C.C.P. art. 3154[2] ordered the surviving spouse, in his capacity as executor of the will, to furnish security. The court found it was immaterial that the executor was also the surviving spouse in community and a usufructuary. The First Circuit affirmed, concluding that LSA-C.C.P. art. 3154 provided authority for the forced heirs to compel the surviving spouse acting in position of executor to furnish *829 security, even though the forced heirs as issue of the marriage between the surviving spouse and decedent would not be able to compel the surviving spouse in the position of usufructuary to provide security under LSA-C.C.P. art. 3154.1. The Court stated, " [t]he right of the forced heirs to compel the executor to furnish security is not abrogated simply by virtue of the executor also being a usufructuary who may not be required to do so." Succession of Watson, 517 So.2d at 278.
Furthermore, in Succession of Jones, 537 So.2d 825 (La.App. 5th Cir.1989), the Fifth Circuit considered the issue of whether a forced heir, born of decedent's first marriage, was entitled to have a surviving spouse in community who was testamentary executrix of decedent's estate post security for property over which she had the usufruct and the forced heir had the naked ownership. Although it is not clear from the facts of the case whether the decedent had dispensed the surviving spouse usufructuary with the obligation of furnishing security, the Court found that under C.C.P. art. 3154.1 the forced heir was entitled to have security posted.
While neither Succession of Watson nor Succession of Jones is on point with the facts of the case at hand, it is clear from their holdings that the rights of a forced heir to compel the furnishing of security under LSA-C.C.P. arts. 3154 and 3154.1 may not be derogated from by testament.
In determining whether a surviving spouse who has been granted a usufruct over separate property comprising the legitime of the descendants who are not issues of the marriage may be relieved of the obligation to furnish security by dispensation of the grantor, we refer to a discussion of the issue in Yiannopoulos, 3 Louisiana Civil Law Treatise, Personal Servitudes Secs. 120-21 (3ed.1989). Yiannopoulos states therein:
A spouse may give to the surviving spouse the disposable portion of his estate in full ownership and confirm a legal usufruct under Article 890 of the Louisiana Civil Code in favor of the surviving spouse over the legitime of his descendants. [Footnote omitted] In such a case, the surviving spouse is dispensed by law of the obligation to give security if the usufruct is established over community property inherited by issues of the marriage. If the usufruct is established over separate property of the deceased spouse or over property, whether separate or community, inherited by descendants other than children of the marriage, security is due. [Footnote omitted] In such a case, dispensation of security by the grantor ought to be invalid. [Emphasis ours]
As to this matter, guidance may be gained from early Louisiana decisions involving dispensation of security by the grantor in favor of a spouse of a second marriage. Under Article 1745 of the Louisiana Civil Code of 1825, and corresponding Article 1752 of the 1870 Code, a donor could not give to his spouse of a second marriage more than one-fifth of his estate in usufruct if he was survived by children of a former marriage [footnote omitted], and question arose whether a testator could validly dispense with security.
In Depas v. Riez [2 La. Ann. 30, 43 (1847)], testator had left to his widow all that the law permitted him to dispose of in her favor in full ownership or in usufruct, at her choice, dispensing with security in case she decided to take the usufruct. Since the testator had been survived by a son of a former marriage, the court held that the widow was entitled to the usufruct of one-fifth of the testator's estate subject to her obligation to furnish security. "Art. 1485 of the Civil Code," the court reasoned, "forbids testators to dispose of the legitimate portion to the prejudice of their descendants, and art. 552, which authorizes them to dispense the usufructuaries from giving security, must be construed with reference to that prohibition. The power to place the property, forming part of the legitimate portion, in the possession of the usufructuary, without such security as will ensure its return at the expiration of the usufruct, would enable testators to evade a regulation of public order. Such a power can never exist." In Succession of Bollinger [30 La. Ann. 193 (1878)], an excessive donation to the surviving spouse was likewise reduced to the disposable portion under Article 1752 of the Louisiana Civil *830 Code of 1870, i.e., to one-fifth of the testator's estate in usufruct. The court imposed on the widow the duty to furnish security as to property inherited in naked ownership by children of a former marriage.
Yiannopoulos, 3 Louisiana Civil Law Treatise, Personal Servitudes, Sec. 120 (3d ed.1989), pp. 245-46.
In the instant case, Judge Becker granted his surviving spouse the usufruct over his share of the community property and the usufruct of separate property bequeathed to his forced heirs, the leasehold estate and the lease agreement with Burger King. In effect, he confirmed the legal usufruct authorized by LSA-C.C. art. 890. Although Judge Becker dispensed with the obligation of posting security, nonetheless, it is clear from the provisions and history of LSA-C.C. art. 890, LSA-C.C.P. art. 3154.1 and the jurisprudence, that a surviving spouse is bound to furnish security when she has been granted a usufruct over separate property of the deceased spouse or over property, whether separate or community, inherited by descendants other than children of the marriage between the deceased and the surviving spouse. In view of this, Diane Becker and Pamela McGinn Becker-Koch, the forced heirs of Judge Becker, are entitled to have security posted.
We now address the issue of whether the trial judge erred in classifying the bequeathed Burger King leasehold interest as a consumable. Appellants contend that the leasehold is a nonconsumable and that the rental payments are fruits of that nonconsumable, thus, under LSA-C.C. art. 550, Mrs. Becker, as usufructuary, is entitled to keep the fruits without an accounting at the termination of the usufruct.
A usufruct is a real right of limited duration on the property of another. The features of the right vary with the nature of the things subject to it as consumables or nonconsumables. LSA-C.C. art. 535.
LSA-C.C. art. 536 defines consumable things as:
those that cannot be used without being expended or consumed, or without their substance being changed, such as money, harvested agricultural products, stocks of merchandise, foodstuffs, and beverages.
Furthermore, LSA-C.C. art. 538 provides:
If things subject to the usufruct are consumables, the usufructuary becomes owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct he is bound to pay the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality.
Nonconsumable things are defined in LSA-C.C. art. 537 as:
those that may be enjoyed without alteration of their substance, although their substance may be diminished or deteriorated naturally by time or by the use to which they are applied, such as lands, houses, shares of stock, animals, furniture, and vehicles.
LSA-C.C. art. 539 provides:
If the things subject to the usufruct are non-consumables, the usufructuary has the right to possess them and to derive the utility, profits, and advantages that they may produce, under the obligation of preserving their substance.
He is bound to use them as a prudent administrator and to deliver them to the naked owner at the termination of the usufruct.
The Civil Code defines fruits as "things that are produced by or derived from another thing without diminution of its substance." LSA-C.C. art. 551. "There are two kinds of fruits; natural fruits and civil fruits ... Civil fruits are revenues derived from a thing by operation of law or by reason of juridical act, such as rentals, interest and certain corporate distributions." LSA-C.C. art. 551.
Our review of the jurisprudence reveals no cases where a court has specifically held that a leasehold interest or sublease was a consumable. Here, the leasehold estate is subject to a usufruct, as is the lease itself. The Civil Code does not provide a concrete definition of a leasehold but several sections of the revised statutes contemplate the existence of a lease. See LSA-R.S. 9:1131.10; 9:1131.24; *831 44.1; 56:499.2; and 56:700.11. Leasehold is defined as an estate in real property held by a lessee/tenant under a lease. It is the asset representing the right of the lessee to use leased property. Black's Law Dictionary, 6th Edition. The Uniform Commercial Code at Sec. 2A-1003 defines leasehold interest as the interest of the lessor or the lessee under a lease contract. Real Property, or land, is not a consumable unless it is sold, and then, the proceeds become a consumable. LSA-C.C. art. 539, 1976 Revision Comment (c).
In reviewing the case record, we note that in his reasons in support of his judgment of April 20, 1994, which was at issue in the earlier appeal, the trial judge concluded that the sublease was a wasting asset and analogized the payments received thereunder to lease payments under an oil and gas lease. He found that "[t]he profits, which in reality is (sic) the subject of the usufruct, are a consumable, not a fruit." Although he did not specifically render judgment classifying the leasehold interest as a consumable at that time because the issue was not before him, in the present case the trial judge held that the Burger King leasehold interest was a consumable. We find he erred in doing so.
The Civil Code is clear that it is the thing subject to the usufruct that is classified as consumable or nonconsumable, not the fruits. LSA-C.C. arts. 538 and 539. It is Judge Becker's interest in the leasehold estate and sublease which is subject to the usufruct, not the rentals, revenues or profits derived therefrom. Unlike the trial court, we find the revenues received from the sublease cannot be analogized to lease payments under an oil and gas lease. The jurisprudence holds that mineral substances extracted from the ground and the proceeds of mineral rights are not fruits, because their production results in the depletion of the property. See Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960). This is not the case before us. Judge Becker's interest in the leasehold estate was his interest under a lease contract. LSA-C.C. art. 2669 defines lease as a contract "by which one party gives to the other the enjoyment of a thing ... at a fixed price." By definition, "the fixed price", i.e. the rent, is a fruit. Judge Becker's granting the usufruct of his interest in the leasehold estate and sublease does not diminish the substance of the property. For this reason, we find the trial judge erred in classifying the Burger King leasehold interest as a consumable.
Under the Civil Code the rights and obligations of the usufructuary with regard to fruits are very clear. The usufructuary is entitled to the fruits. LSA-C.C. 550. The usufructuary's right to the fruits commences on the effective date of the usufruct. LSA-C.C. art. 554. The usufructuary acquires the ownership of civil fruits during the existence of the usufruct. Civil fruits accrue day by day and the usufructuary is entitled to them regardless of when they are received. LSA-C.C. art. 556. Mrs. Becker, as usufructuary, is entitled to the rentals received from the Burger King lease. Although the Becker heirs are entitled to request security under LSA-C.C. art. 890 and C.C.P. art. 3154.1, they are not entitled to security for the rental payments under the lease.
We now consider whether the trial judge erred in making a calculation of the forced portion and determining the existence of an impingement on the legitime prior to traversal of the descriptive list.
LSA-C.C.P. art. 3137 mandates that the Sworn Descriptive List is prima facie correct unless successfully traversed or amended. Traversal requires an adversarial hearing. Furthermore, the contents of the Sworn Descriptive List, the classification of property as former community or separate, and the values of the assets included therein are used as the basis for the calculation of the disposable portion of the estate under LSA-C.C. art. 1505 and an action for reduction of excessive donations under LSA-C.C. art. 1503.
The trial court's judgment and reasons for judgment contain no reference to any finding by the court that the Highlands, North Carolina property was either the separate property of the decedent or property of the former community. In addition, a review of the record indicates that the sworn descriptive list filed March 25, 1994 does not include the Highlands, North Carolina property or the proceeds from the sale of it. It further indicates that to date the appellants have not amended the sworn descriptive list to include this asset or the proceeds therefrom. Although the record shows that appellees *832 filed motions to traverse the sworn descriptive list and reduce the disposable portion, no orders were attached to these motions and hearing dates were never set. The record is also devoid of any supporting documentation regarding the Highlands, North Carolina property, the sale of it, or the placement of any proceeds from the sale. In view of this, we find the traversal of the descriptive list and reduction of the disposable portion issues were not properly before the court. Hence, we conclude the judge erred in calculating the forced portion, determining the existence of an impingement on the legitime and holding the Becker heirs were entitled to security for the Highlands, North Carolina property.
Accordingly, the trial court judgment is reversed and vacated. The case is remanded to the trial court for further proceedings on the motions to traverse the descriptive list, calculations of the disposable and forced portions and the determination of any security due by Mrs. Becker in the event the forced heirs' legitime has not been satisfied by the particular legacy of the separate property bequeathed to them.
REVERSED AND REMANDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
We grant rehearing for the sole purpose of considering the exhibits which were introduced into evidence at the hearing on March 29, 1996, but were omitted from the appeal record. After reviewing the exhibits, we find no basis to change our earlier ruling.
Accordingly, the application for rehearing is denied.
NOTES
[1] Succession of Becker, 94-1491 (La.App. 4 Cir. 6/1/95), 660 So.2d 61, writ denied, 95-2411 (La.12/15/95), 664 So.2d 455.
[2] LSA-C.C.P. art. 3154 provides:

Forced heirs and the surviving spouse in community of the testator may compel the executor to furnish security by an ex parte verified petition therefor. If the court finds that the petitioner is a forced heir, or the surviving spouse in community, it shall order the executor to furnish security, within ten days of the service of the order, in an amount determined by the court as adequate to protect the interest of the petitioner.