CRAIN, J.
Un this succession proceeding, a legatee filed a petition seeking to terminate a testamentary usufruct or, alternatively, requesting that the usufructuary post security. The trial court granted a partial summary judgment finding that the usu-fructuary had the right to sell the property subject to the usufruct; and, after a trial, the court entered a judgment that denied any relief to the petitioner. We amend the summary judgment and affirm the judgment as amended; and we reverse, in part, the judgment on the merits and remand.
FACTS AND PROCEDURAL HISTORY
Carole Bagwell Beard died testate on November 5, 1998. Her surviving husband, Julius Beard, Jr., instituted this proceeding shortly after her death and obtained an order probating Carole’s last will and testament. Carole’s will bequeathed to Julius a life-time usufruct over her community property and separate property, except for certain property bequeathed to Julius in full ownership. The usufruct was created in Article IV of the will, which provides, in pertinent part:
4.2 Except for the property which is used in satisfaction of the forced portion of my estate, my spouse shall have the right, power and authority to sell or otherwise dispose of any property subject to my spouse’s usufruct without having to obtain the consent of the naked owners thereof. Should any property subject to the usufruct granted herein to my spouse be sold or exchanged at any time, or from time to time, the usufruct to which said property was subjected shall apply to the proceeds of the sale or exchange of such property and to any property in which such proceeds may from time to time be reinvested.
After probating the will, Julius obtained a judgment of possession on June 29,1994, that, in pertinent part, placed him in possession of the “usufruct for his lifetime of all [of Carole’s] share in the community property and of any separate property” owned by Carole at the time of her death, less and except the property bequeathed to Julius in full ownership. The judgment of possession further provided:
LThat Julius Beard, Jr., be recognized as the surviving spouse in community, and as such entitled to the ownership and sent into possession of an undivided one-half (1/2) interest in the property belonging to the community of acquets and gains which existed between the deceased and her husband, together with usufruct for his lifetime of the remaining undivided one-half (1/2) as provided in the decedent’s Last Will and Testament ... which property is described as follows_(Emphasis added.)
The ensuing list of property consists of both immovable and movable property, including 295.51 acres of immovable property located in East Feliciana Parish (referred to herein as “the farm”) and a parcel of property located in the Virgin Islands, which Julius subsequently sold. The judgment of possession also vested *756 each of Carole’s four children, two by a prior marriage and two from her marriage with Julius, with an undivided one-eighth (l/8th) interest in the property subject to the usufruct.
In September of 2008, approximately 14 years after the entry of the judgment of possession, one of Carole’s children from her first marriage, Christopher D. Shows, filed a petition in the succession proceeding seeking to terminate the usufruct based upon allegations that Julius had sold movable and immovable property subject to the usufruct without authorization from the naked owners and that he intended to sell more in the future. The petition further alleged that Julius had allowed fraud, waste, and abuse to impinge and devalue the property, that he failed to prevent encroachments, and that he failed to properly manage the property by diverting, converting, and dissipating the assets. Shows also recorded a notice of lis pendens in the mortgage records for East Feliciana Parish and East Baton Rouge Parish. He subsequently amended the petition to request that Julius be enjoined from selling or otherwise alienating or encumbering the property.
Julius answered and asserted a recon-ventional demand alleging that he was entitled to sell the property in accordance with the judgment of possession and |4Carole’s will. Julius contended that the judgment of possession provided him with all rights and privileges of a usufructuary as provided in Carole’s will, including, without limitation, paragraph 4.2, which set forth the right of the usufructuary to sell the property. He requested that the court declare his authority to sell or exchange the property subject to .the usu-fruct, order the cancellation of the notice of lis pendens, and award him all damages caused by the filing of the notice of lis pendens. The reconventional demand was subsequently amended to include an alternative claim requesting that the court amend or reform the judgment of possession to include the right to sell the property if the court found that the judgment of possession did not already incorporate the pertinent terms of Carole’s will by reference. In response to the reconventional demand, Shows filed a peremptory exception raising the objection of res judicata contending that the judgment of possession could not be modified because it was a final judgment and had the effect of res judicata.
While the exception was pending, Julius moved for a partial summary judgment seeking, among other relief, a judgment: (1) declaring that the provisions of Carole’s will related to the usufruct, including those found in Article IV of the will, are incorporated in the judgment of possession, and/or, in the alternative, amending the judgment of possession to include those provisions; (2) declaring the notices of lis pendens to be null and ordering their cancellation by the respective clerks of court; and (8) declaring that Julius is authorized to sell the property subject to the usufruct without the consent of Shows, with the proceeds thereof to |sbecome part of the usufruct.[1] Julius’ exhibits offered in support of the motion included the judgment of possession and Carole’s will.[2]
*757 In addition to his argument that the judgment of possession expressly incorporated the terms of the usufruct contained in Carole’s will, Julius also contended that the judgment statutorily incorporated those terms pursuant to Louisiana Code of Civil Procedure article 8061C, which provides:
A judgment sending one or more petitioners into possession under a testamentary usufruct or trust automatically incorporates all the terms of the testamentary usufruct or trust without the necessity of stating the terms in the judgment.
This provision was added to Article 8061 by Louisiana Acts 2010, No. 226, § 1, which became effective on August 15, 2010; however, Julius maintained that the amendment was either procedural or curative and, therefore, applied retroactively to the judgment of possession rendered in 1993.
The trial court granted the motion for partial summary judgment and overruled the peremptory exception raising the objection of res judicata, finding that Carole’s will unequivocally gave Julius the authority to sell the property and that the language of the will should be binding. The court further found that the 2010 amendment to Article 3061 applied retroactively but noted that “the court’s ruling would be the same without the legislative enactment” of that amendment.
The partial summary judgment, however, did not adjudicate the merits of the principal claim by Shows seeking to terminate the usufruct or, alternatively requesting that Julius post security, nor Julius’ claim seeking damages and attorney’s fees caused by the filing of the notices of lis pendens. Those claims | (¡proceeded to trial where the trial court heard testimony from numerous witnesses that primarily addressed the condition of the farm before and during the existence of the usufruct and Julius’s intention to sell that property.
The evidence established that Carole and Julius purchased the farm during their marriage, and Shows and his children used the property for recreational purposes. Shows testified that as his mom was dying in the hospital, the family had a meeting at her bedside and agreed that the farm would “stay in the family, and the kids and grandkids would play on it and enjoy it, and it rocked along like that just fine for [the next] 15 years.” At some point thereafter, Julius contacted Shows and advised that he was going to sell the farm and offered Shows the option to purchase it for appraised value. When the parties were unable to reach an agreement, Julius informed Shows that he was going to sell the property on a specified date; and, according to Shows, Julius informed him that he “would never see a penny” of the proceeds. Shows, who is an attorney, believed that any sale of the property required his consent as a naked owner, and he cited the fact that Julius had obtained their consent in connection with the sale of some stock in a privately held corporation that was subject to the usufruct. Shortly before the identified sale date, Shows filed the petition seeking to terminate the usufruct and, as amended, to enjoin any sale of the property subject to the usufruct.
In support of his allegations of abuse and waste, Shows relied on Julius’ sale of the property in the Virgin Islands without the consent of the naked owners and his stated intent to sell the farm without their consent. Shows also testified that he and his immediate family have been banned from the farm since he filed the petition. As to Julius’ maintenance of the property, Shows described Julius’ efforts with the farm as “up or down over the years,” but Shows cited only one instance of any purported damage or deterioration, which he *758 described as some “drainage problems” on one end of the property resulting from development on adjacent |7property that was “not a giant problem.” Shows confirmed that Julius “nearly always” bore the financial expense of the maintenance of the farm and that Julius purchased tractors and related equipment for that purpose. Shows conceded that Julius had the property logged and re-planted after the existing timber sustained damage from beetles, and that he paid for other improvements, including a water well and the construction of a pond.
Brian Hodges, a forester accepted by the trial court as an expert in timber assessment and management, testified that he supervised the replanting of pine trees on the farm several years ago and did a follow-up assessment of the property during the year prior to the trial. In his opinion, the growth of the trees was in accordance with his expectations, and he did not see any signs that Julius had abused the timber operation or had not followed Hodges’s instructions in connection therewith. He also did not see any signs of significant erosion or damage to the property. Leonard Kilcrease, an adjacent property owner, testified that he sometimes accesses the farm with permission, and he has never seen any erosion on the property caused by Julius.
Julius testified that when he and Carole purchased the property in the early 1990s, it was in “pretty bad shape” and “everything was in disrepair.” There was “junk all over the place [and] the house was infested with rats.” They remodeled the house and cleaned up the property. The property had been clear-cut prior to their acquisition, and Julius had any remaining timber cut and replanted. He also paid for several improvements, including a barn for the equipment, a pond, and a new water well. His usual maintenance consisted of cutting the grass, “bush hogging,” grading the access road, maintaining the equipment, and repairing the house.
He decided to sell the farm because he and his present wife intend to move to Washington, and he no longer has any use for the property and has grown tired |8of maintaining it. He denied any knowledge of the family meeting at Carole’s bedside where the family agreed not to sell the property, and he intended to use the proceeds from the sale to invest in an annuity that would be payable to all four children. Julius obtained an appraisal and contacted Shows to determine if he was interested in purchasing the farm because Shows had previously said he wanted to buy the property if it was ever offered for sale. During this time, an interested buyer approached Julius and offered to purchase the farm for $1,100,000.00. When Shows failed to produce a promised purchase agreement after several months, Julius informed Shows that he was going to sell the property to the other party. He gave Shows a definite deadline, and Shows then filed the petition and recorded the notices of lis pendens shortly before that deadline.
As to the property in the Virgin Islands, Julius testified that he and Carole had listed the property for sale before her death, and a buyer signed and forwarded a purchase agreement two days after Carole’s death. Julius contacted the closing attorney in the Virgin Islands and was informed that Carole’s death certificate would be sufficient to allow Julius to sign the act of sale and complete the transaction. He eventually used the proceeds from the sale to purchase a house in Baton Rouge, which is occupied by a son from his marriage to Carole. As to the movable property subject to the usufruct, it consists primarily of accounts at several financial institutions, and Julius confirmed that he *759 has a financial advisor who manages the investment of those funds.
After taking the matter under advisement, the trial court denied Shows’ claim to terminate the usufruct or to require Julius to post security, finding that Julius has acted as a prudent administrator of the property and that Shows failed to prove that Julius had “placed the property itself or the rights of the naked owners in peril.” The court also denied Julius’ claim for damages asserted in his reconventional demand.
|<)A judgment was signed that set forth the court’s earlier rulings granting partial summary judgment and overruling the exception of res judicata, and the court’s ruling after the trial on the merits. More specifically, the summary judgment (1) declared that the provisions of Carole’s will related to the usufruct are incorporated in the judgment of possession by the terms of the judgment and/or amended the judgment of possession to include the provision of Article IV of the will; (2) declared that Julius was granted and has the power to sell all property of the succession subject to the usufruct, with all of the sale proceeds being subject to the same usufruct, including the farm property; and (3) ordered the cancellation of the notices of lis pendens. For the trial on the merits, the judgment denied any relief requested by Shows in his petition, as amended, to terminate the usufruct or to post security and denied any relief requested by Julius in his reconventional demand.
Shows appealed and assigns as error the trial court’s denial of the exception of res judicata and the concurrent granting of summary judgment to Julius, “i.e. in allowing the modification of the existing ‘Judgment of Possession’ by judicially including the right to sell in favor of Julius Beard, Jr., the usufructuary.” Shows also assigns as error the trial court’s failure to impose upon Julius the obligation to post bond.[3]
LAW AND ANALYSIS
A. Summary Judgment
A motion for summary judgment shall be granted only if “the pleadings, depositions, answers to interrogatories, and admissions, together with the | inaffidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Pro. art. 966B(2). The party seeking summary judgment has the burden of proving an absence of a genuine issue of material fact. La.Code Civ. Pro. art. 966C. If the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial. La.Code Civ. Pro. art. 966C(2); Suite v. Lafayette City-Parish Consolidated Government, 04-1459 (La.4/12/05), 907 So.2d 37, 56. In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of *760 whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1085, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29.
In support of the summary judgment, Julius argues that the authority to sell the property subject to the servitude was incorporated by reference into the judgment of possession by the language appearing therein that vested him with a usufruct “as provided in the decedent’s Last Will and Testament.” Shows counters that this language was merely a reference to the source of the usufruct rather than an incorporation of the terms of the usufruct. Shows also argues that permitting the terms of the usufruct to be incorporated into the judgment of possession would violate the Louisiana Public Records Doctrine.[4]
In construing a judgment, the entire context must be considered, and in the event of doubt or ambiguity, it is proper to consider the pleadings, subject matter of the suit, reasons for judgment, and other matters of record in order to arrive at an interpretation consistent with a proper decree on the facts and law presented. In Williams Law Firm v. Board of Supervisors of Louisiana State University, 03-0079 (La.App. 1 Cir. 4/2/04), 878 So.2d 557, 565; State, Department of Transportation & Development v. Sugarland Ventures, Inc., 476 So.2d 970, 974 (La.App. 1 Cir.), writ denied, 478 So.2d 909 (La.1985).[5]
The pleadings and other matters of record in this succession proceeding include Carole’s will and an order probating that will. Pursuant to the terms and conditions of Article IV of the will, Carole granted Julius the authority to sell property that is subject to the usufruct. Shows has never disputed that the will granted that authority to Julius. Based upon the clear intent of the testator reflected in the will probated with the court, we construe the language in the judgment of possession vesting Julius with a usufruct “as provided in the decedent’s Last Will and Testament” as including, by reference, the terms and conditions of the usufruct set forth in Carole’s will. This interpretation of the judgment of possession is entirely consistent with the undisputed facts and law presented to the court when the judgment was rendered.
We also reject Shows’ assertion that the Public Records Doctrine prohibits the incorporation of the will by reference into the judgment of possession. The Public Records Doctrine and its basic principles of recordation are now set forth in Louisiana Civil Code articles 3338 and 3342, “which protect third persons from the effect of unrecorded instruments affecting real estate and attempts to vary the terms or statements of fact in recorded instruments.” Hiers v. Dufreche, 12-1132 (La.App. 1 Cir. 5/31/13), 2013 WL 2395055 (quoting 1 Peter S. Title, Louisiana | iaReal Estate Transactions § 8:26 (2d ed.2008)). *761 The Public Records Doctrine generally expresses a public policy that interest in real estate must be recorded in order to affect third persons, and the doctrine is founded upon our public policy and social purpose of assuring stability of land titles, Cimarex Energy Co. v. Mauboules, 09-1170 (La.4/9/10), 40 So.3d 931, 943.
The Public Records Doctrine has been described as a negative doctrine because it does not create rights, but rather, denies the effect of certain rights unless they are recorded. Cimarex, 40 So.3d at 944. In explaining the negative nature of the doctrine, the Louisiana Supreme Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. Simply put, the rule that what is not recorded is not effective does not mean that what is recorded is effective in all events, despite any defect contained therein. Cimarex, 40 So.3d at 944.
Shows does not contend that the judgment of possession was not recorded, nor does he articulate how the Public Records Doctrine might prohibit the judgment’s incorporation of the terms of Carole’s will by an express reference thereto, particularly where the will was probated by the court and is a matter of public record in this same proceeding. Julius’s status as a usu-fructuary is evident from the face of the judgment of possession, and the extent of his authority in that capacity is readily ascertainable by a third person from the probated will referenced in the judgment and filed in this proceeding. Moreover, Shows, as an owner identified in the judgment of possession and personally bound thereby, does not qualify as a “third person” entitled to rely upon the Public Records Doctrine. See La. Civ.Code art. 3343 (effective July 1, 2006).[6]
| ^Accordingly, the trial court did not err in granting partial summary judgment and declaring that the judgment of possession incorporated by reference the terms and conditions of Carole’s will relating to the testamentary usufruct granted to Julius. However, to ensure that the summary judgment comports with the terms and conditions of Carole’s will that are incorporated into the judgment of possession, we amend and consolidate the first two numbered paragraphs of the summary judgment, bearing numbers “1)” and “2),” to provide as follows:
Judgment is hereby rendered declaring that the judgment of possession rendered herein on June 29, 1994, incorporates by reference the terms and conditions of the Last Will and Testament of Carole Bagwell Beard relative to the testamentary usufruct granted to Julius Beard, Jr., including but not limited to those terms and conditions set forth in Article.IV of the Last Will and Testament.[7]
*762 We further find no merit to Shows’ objection of res judicata because the declaratory relief granted by the court did not alter or amend the judgment of possession. Rather, the summary judgment was a declaration of the rights of the parties based upon the court’s construction of the language of the judgment of possession. A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation,- and the declaratory judgment will remove the uncertainty or terminate the dispute. See La.Code Civ. Pro. arts. 1871, 1875; Williams v. City of Baton Rouge, 02-0339 (La.App. 1 Cir. 2/14/03), 848 So.2d 9, 13 (declaring parties’ rights and responsibilities arising out of judgments). The trial court correctly overruled Shows’s exception of res judicata.
B. Denial of Request for Security
| uIn his second assignment of error, Shows contends that the trial court erred in failing to impose upon the usu-fructuary the obligation to post bond. Consideration of this assignment of error first requires a determination of the applicable law, as the provisions governing a usufructuary’s obligation to post bond have undergone numerous amendments since the date of Carole’s death in 1993.
Julius specifically seeks to invoke an amendment to Louisiana Civil Code article 1499, added by Louisiana Acts 2003, No. 548, § 1 (“2003 Act”), which relieves a surviving spouse of the obligation to post security for the usufruct “except as expressly declared by the decedent or as permitted when the legitime is affected.” However, the 2003 Act provides that the “provisions of this Act are interpretive, procedural, and remedial and shall apply to testaments executed on or after June 18, 1996.” La. Acts 2003, No. 548, § 2 (emphasis added). We construe this statement as an expression of intent by the legislature that the amendment does not apply to wills executed before June 18, 1996. Otherwise, the statement would be superfluous. Carole’s will was executed in 1993, so the 2003 Act does not apply to this case. See La. Civ.Code art. 6; Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97), 694 So.2d 180, 183 (recognizing that if a legislative enactment expresses legislative intent regarding retrospective or prospective application, no further inquiry is warranted unless the enactment impairs contractual obligations or vested rights).
Furthermore, it is well settled that the law in effect at the time of the decedent’s death controls the substantive rights of inheritance in and to the succession property. See In re Succession of Buck, 02-0401 (La.App. 1 Cir. 11/8/02), 834 So.2d 475, 477; Succession of Landry, 460 So.2d 29, 30 (La.App. 1 Cir.1984), writ denied, 462 So.2d 1249 (La.1985); see also La. Civ.Code art. 870 (providing, in pertinent part, that testate and intestate succession rights, 11¡¡including the right to' claim as a forced heir, are governed by the law in effect on the date of the decedent’s death).[8] The alleged obligation to provide security for the usufruct pertains to substantive rights of inheritance for both Julius, as the usufructuary of the designated *763 property, and Shows, as a naked owner of that property. Accordingly, the law in effect at the time of Carole’s death in 1993 governs whether Julius is required to post security for the usufruct.
Louisiana Civil Code article 571 provided as follows in 1993:
The usufructuary shall give security that he will use the property subject to the usufruct as a prudent administrator and that he will faithfully fulfill all the obligations imposed on him by law or by the act'that established the usufruct unless security is dispensed with. (Emphasis added.)
The circumstances under which “security is dispensed with” are the subject of Louisiana Civil Code article 573, which at the time of Carole’s death provided:
Security may' be dispensed with by . the grantor of the usufruct or by operation of law. Legal usufructuaries, and sellers or donors of property under reservation of usufruct, are not required to give security.
Thus, under these provisions, legal usu-fructuaries were exempted from the obligation to post security. The usufruct granted in favor of a surviving spouse, whether testate or intestate, is a legal usufruct under the former version of Louisiana Civil Code article 890. See La. Civ. Code art. 890 (repealed by La. Acts. 1996, No. 77, § 1); Succession of McCarthy, 583 So.2d 140, 142 (La.App. 1 Cir.1991). Therefore, Julius, as a legal usufructuary, was generally exempted from the obligation to post security. However, Article 890 carved out the following exception from the exemption applicable to legal usu-fructuaries:
hJf the usufruct authorized by this Article affects the rights of heirs other than children of the marriage between the deceased and the surviving spouse or affects separate property, security may be requested by the naked owner. (Emphasis added.)
Similarly, Louisiana Code of Civil Procedure article 3154.1 (repealed by La. Acts. 2004, No. 158, § 2) provided:
If the former community or separate property of a decedent is burdened with a usufruct in favor of his surviving spouse, successors to that property, other than children of the decedent’s marriage with .the survivor, may request security ... in an amount determined by the court as adequate to protect the petitioner’s interest.
In reliance upon these articles, this court has repeatedly held that a surviving spouse who receives a legal usufruct over estate property is required to post security if the naked owners are children of a previous marriage of the decedent. See Succession of Weidig, 96-1214 (La.App. 1 Cir. 2/14/97), 690 So.2d 134, 137 (reversing trial court’s order permitting a delay for surviving spouse to post security until she' was placed in possession where naked owners were children of the decedent’s prior marriage); Morgan v. Leach, 96-0173 (La.App. 1 Cir. 9/27/96), 680 So.2d 1381, 1385 (holding that “plaintiffs herein, being children of a previous marriage, are clearly entitled to security”).[9] Accordingly, although the record supports the trial court’s finding that Julius has acted as a *764 prudent administrator of the property, his obligation to post security is mandatory under the law in effect at the time of Carole’s death because Shows is a child of Carole’s prior marriage. See La. Civ.Code arts. 571, 573, 890, and 3154.1; Succession of Weidig, 690 So.2d at 137; Morgan, 680 So.2d at 1385. The trial court erred in failing to order Julius to post security.
However, the trial court does have discretion concerning the amount and form of the security. As to the amount of the security, Louisiana Civil Code article 117572 sets forth that the security “shall be in the amount of the total value of the property subject to the usufruct,” but the article authorizes the court to “increase or reduce the amount of the security, on proper showing, but the amount shall not be less than the value of the movables subject to the usufruct.”
The form of the security is governed by Louisiana Civil Code article 1514 and Louisiana Revised Statute 9:1202, both of which authorize the court to “order the execution of notes, mortgages, or other documents as it deems necessary” or “impose a mortgage or lien” on the property as security.[10] Comment (d) to Article 1514 further explains:
And the very word “security” itself is susceptible of several different meanings. There are many forms of security, such as a surety bond, a legal or conventional mortgage, and perhaps, in a more colloquial sense, a designation of the nature of an investment. An example of that latter kind of provision is found in Civil Code Article 618, which applies when, for example, a usufruct of a non-consumable is transformed into a usu-fruct of a consumable and the naked owner and the usufructuary are unable to agree on the investment of the proceeds within one year of the transformation of the property. In that case, Civil Code Article 618 authorizes the court to determine the nature of the investment. It is hoped that courts will not inflexibly apply the rule of this Article to require a usufructuary to post bond every time a naked owner requests security, but will consider all of the circumstances of the situation, such as the nature of the property that comprises the legitime, and whether the property is movable or immovable, consumable or nonconsumable, and what practical controls exist or may be used to protect the right of the naked owner without infringing on the rights of the usufructuary, or if so, by infringing in the least restrictive manner possible.
The trial court’s discretion is further guided by the purpose of the security as set forth in Article 571, providing that the usufructuary “shall give security that he will use the property subject to the usu-fruct as a prudent administrator and that he will faithfully fulfill all the obligations imposed on him by law or by the act that established the usufruct....” In that regard, we note that Julius’ expressed intention to exercise his right to sell the farm is not a breach of those obligations, | lsnor is it otherwise relevant to the determination of the amount and form of the security appropriate under Articles 571 and 572. Rather, in the event of a sale of any property, Louisiana Civil Code article 618 may be invoked in a timely manner by the naked owners to permit the court to im- ■ pose appropriate security at that time for *765 that specific purpose. See La. Civ.Code arts. 616, 618.
In accordance with the foregoing, we remand the matter to the trial court for a determination of the amount and form of security to be provided by Julius. See Succession of Weidig, 690 So.2d at 137 (remanding to trial court for determination of appropriate security); Morgan, 680 So.2d at 1385 (remanding to trial court for determination of appropriate security).
CONCLUSION
We amend and consolidate the first two numbered paragraphs of the May 9, 2013 partial summary judgment, bearing numbers “1)” and “2),” to provide as follows:
Judgment is hereby rendered declaring that the judgment of possession rendered herein on June 29, 1994, incorporates by reference the terms and conditions of the Last Will and Testament of Carole Bag-well Beard relative to the testamentary usufruct granted to Julius Beard, Jr., including but not limited to those terms and conditions set forth in Article IV of the Last Will and Testament.
As amended, that judgment is affirmed. We reverse that portion of the judgment for the trial on the merits, also signed on May 9, 2013, to the extent it denied Shows’ request that Julius be required to post security; and we remand to the trial court for a determination of the appropriate amount and form of the security. Costs of this appeal are assessed equally to Julius Beard, Jr. and Christopher D. Shows.[11]
MOTION TO SUPPLEMENT RECORD GRANTED; SUMMARY JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED; JUDGMENT ON
TRIAL OF THE MERITS REVERSED, IN PART, AND REMANDED.

. Julius also re-urged a previously filed motion for partial summary judgment that requested similar relief and further requested that Shows's suit be dismissed. The trial court held a hearing on the previous motion but apparently had not issued a ruling on that motion at the time of the filing of the subject motion for partial summary judgment.

. These exhibits were offered in support of the previously filed motion for partial summary judgment and were offered again by reference in support of the subject motion for partial summary judgment.

. Shows did not assign any error to the trial court’s denial of his request to terminate the usufruct or to enjoin any future sale of the property, so that portion of the judgment is final. The trial court also designated the judgment as a final judgment based upon the determination that there was no just reason for delay. See La.Code Civ. Pro. art. 1915B(1). The court's determination of the merits of the claims set forth in Shows’s petition and Julius’s reconventional demand constitutes a final, appealable judgment under Louisiana Code of Civil Procedure articles 1841 and 2083A; however, to the extent the designation applies to the provisions of the judgment granting summary judgment to Julius, we find no error in that designation.

. See La. Civ.Code arts. 3338 et seq.

. In construing the language of the judgment of possession to determine if it expressly in-coiporates the will’s terms and conditions for the usufruct, we are not endeavoring to determine whether the judgment is a "final" judgment for purposes of appeal pursuant to Louisiana Code of Civil Procedure articles 1918 and 2083. In that regard, Louisiana courts require that a final judgment be "precise, definite and certain.” See Laird v. St. Tammany Parish Safe Harbor, 02-0045 (La.App. 1 Cir. 12/20/02), 836 So.2d 364, 365. A review of the judgment of possession for purposes of Articles 1918 and 2083 is not necessary because no appeal of the judgment of possession is before the court. Rather, the appeal is from the summary judgment construing the judgment of possession and determining the rights and obligations flowing therefrom.

. For the source provision in effect prior to the adoption of Article 3343, see La. R.S. 9:2722 (repealed by La. Acts 2005, No. 169, § 8).

. The first numbered paragraph of the summary judgment alternatively "amended” the judgment of possession to incorporate the pertinent provisions of Carole's will. In light of our holding that the judgment of possession expressly incorporates those provisions, together with our amendment of the summary judgment to reflect that holding, we pretermit any consideration of whether the judgment of possession could be amended by the trial court under Louisiana Code of Civil Procedure articles 1951 or 3393B. For these same reasons, we pretermit consideration of whether Louisiana Code of Civil Procedure article 3061C applies retroactively to the judgment of possession.

. This provision in Article 870 was enacted by La. Acts 2001, No. 560, which provides that "this Act shall not apply to successions which have been judicially opened prior to the enactment of this Act.” La. Acts 2001, No. 560, § 3. Although Carole’s succession was judicially opened before the effective date of that act, this particular provision in Article 870 is nevertheless consistent with the jurisprudence cited herein which mandates that the law in effect on the date of the decedent's death controls the substantive rights of inheritance in and to the succession property.

. See also La. Civ.Code art. 1514, Comment (d) (“If one parses the sentence [in Article 890], it is apparent that the requirement of ‘security’ is not automatic; the naked owner must first make a request for security to be required.’’); Succession of Becker, 96-2169 (La.App. 4 Cir. 12/3/97), 704 So.2d 825, 830, writ' denied, 98-0682 (La.5/8/98), 718 So.2d 432 (surviving spouse required to post security where naked owners were children of decedent's prior marriage).

. Louisiana Revised Statute 9:1202 and the pertinent language in Article 1514 were both adopted by Louisiana Acts 2003, No. 1207, § 1. The legislature deemed the amendment to be "interpretative, procedural and remedial" without any limitation on its application. Therefore, we find the provisions applicable to this case. See La. Civ.Code art. 6; Keith, 694 So.2d at 183.

. We also grant the parties' joint motion to supplement the appellate record to include the exhibit captioned "STIPULATION (Exhibit J-3)” attached to the motion and order that said exhibit be included in the record herein.