McClendon, j.
|3In this case, a workers’ compensation insurer appeals a judgment that found its workers’ compensation insurance policy issued on behalf of an employer in full force and effect on the date of the accident of an employee. For the reasons that follow, we reverse the summary judgment granted in favor of the employers. We also reverse the denial of the summary judgment filed by the insurer and render summary judgment in its favor.
FACTS AND PROCEDURAL HISTORY
This action arises out of an accident that occurred on January 24, 2013, when John Peters was injured while in the course and *166 scope of his employment with Ray-Bar Construction,- LLC (Ray-Bar) and while working on a job for the primary contractor, Gilchrist Construction. Company, LLC (Gilchrist), On May 3,-2013, Mr. Peters filed a disputed claim for compensation. Ray-Bar’s workers’ compensation insurer, Louisiana Workers’ Compensation Corporation (LWCC), answered the claim denying that it was the workers’ compensation insurance carrier for Mr. Peters on the date of the accident based on cancellation of the policy for nonpayment of the premium. LWCC asserted that thé policy was cancelled on January 12,2013.'
Subsequently, LWCC filed a motion for summary judgment seeking to dismiss Mr. Peters’ claims against it. Ray-Bar also filed a motion for summary judgment alleging that the policy was in effect on the date of the accident. Additionally, Gilchrist and its insurer, Travelers Casualty Insurance Company (Travelers), filed a similar motion for summary judgment arguing that LWCC provided coverage to Ray-Bar on the date of the accident at issue.
On September 5, 2014, the cross motions for summary judgment were heard by the OWC. The parties introduced several exhibits at the hearing. On September 12, 2014, the< OWC issued oral .reasons for judgment finding that the policy was in effect on the date of the accident. A judgment was signed on September 24, 2014, denying the motion for summary judgment filed by LWCC and granting the two motions for summary judgment, filed by Ray-Bar and by |4Gilchrist and Travelers. The judgment held that the insurance policy issued to Ray-Bar was in full force and effect on January 24, 2013, the date of Mr. Peters’ accident. LWCC appealed.
LAW AND DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, .if any,-admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B(2)[1] The party seeking summary judgment has 'the burden of proving an absence of a genuine issue of material fact. LSA-C.C.P. art. 966 C. If the movant satisfies the initial burden, the burden shifts to the party opposing' summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial. LSA-C.C.P. art. 966 C(2); Suire v. Lafayette City-Parish Consolidated Government, 04-1459 (La.4/12/05), 907 So.2d 37, 56. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966 A(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App, 1 Cir. 6/6/14), 147 So.3d 753, 759-60.
In its appeal, LWCC asserts that the OWC erred in finding that the LWCC *167 policy issued to Ray-Bar was in full force and effect on January 24, 2013. It also contends that the OWC erred in finding that LWCC “lulled” Ray-Bar into believing that its policy was in effect and in finding that LWCC received the necessary funds | fifrom Ray-Bar to keep its policy in effect. On the other hand, Ray-Bar, Gilchrist, and Travelers (sometimes collectively referred to as “the employers”) assert that the LWCC policy was in effect at the time of the accident, contending that the money owed at the time of cancellation was for a separate debt and that all premiums due and .owing had been paid.
The record shows that LWCC issued a workers’ compensation insurance policy to Ray-Bar in April 2009.. Coverage under the policy was renewed yearly, with the policy term at issue from April 9, 2012 to April 9, 2013. LWCC used an on-line reporting and invoicing system. At the end of each month, LWCC 'automatically charged an estimated monthly premium to Ray-Bar, based on an average of the previous year’s activity. For the 2012-2013 policy ■ period, the system charged $3,849.00 as the estimated monthly premium. Then, in order to calculate the actual monthly premium, LWCC required Ray-Bar to report its payroll- mpnthly. ..The reporting was due on the 12th of each month for the previous month’s payroll. Once payroll was reported by Ray-Bar, the premium balance owed was increased or decreased depending, on the reported amount, and that amount became past due after the 27th of the month. - ■
The record further shows that in August 2012 a year-end audit was performed for the 2011-2012 policy period to confirm and correct premiums for the previous policy year. The audit showed that Ray-Bar owed an additional premium in the amount of $11,985.00. When Ray-Bar failed to pay the additional premium, and as a condition-for continued coverage, LWCC and Ray-Bar agreed to'transfer the debt to a promissory note to be paid in three installments of $3,965.30 for the months of September, October, and November 2012. These payments, invoiced at the end of the month, were due in addition to the monthly premium amounts owed by Ray-Bar.
On November 26, 2012, LWCC generated an invoice showing a balance due of $12,468.07. (This amount consisted of the October and November installment payments, $573.00 for the October premium; the $3,849.00 system- charge for the November premium, plus three $38.49 late fees.) The' invoice also indicated that [fiLWCC issued a cancellation notice on that date for non-payment in the amount of $4,57⅜.79, with an effective cancellation date of December 12, 2012. (The $4,576.79 amount consisted of one .installment payment, the October premium, and one late fee.) No payments were made, and the policy was cancelled on December 12,2012. Shortly thereafter, Ray-Bar' contacted LWCC for the amount due and was informed that $8,542.09 was owed. Janet Brown, Ray-Bar’s accountant, testified by deposition that she called 'LWCC’s underwriter in December 2012, and asked him, “What do I need to do to stay current?” The underwriter gave Ms. Brown the $8,542.09 amount.[2] According to LWCC, this amount.'consisted of the October and November installments, the October- reported premium amount, and a late fee.
Ray-Bar made, payment of $8,542.09 to LWCC on December 21, 2012. The record shows that when Ray-Bar delivered the payment, it had not.completed and submitted its November payroll report. The *168 payment was processed on December 26, 2012, and automatically applied to the oldest debts owed to LWCC, in accordance with its accounting system. On December 27, 2012, the policy was reinstated retroactive to December 12, 2012. However, the payroll report and premium due for the November payroll became past due on December 27, 2012, and LWCC generated another invoice on that date indicating a balance due of $7,813.47. The invoice also indicated that LWCC issued a cancellation notice for non-payment in the amount of $3,925.98, with an effective cancellation date of January 12, 2013. Ray-Bar failed to pay the amount due of $3,925.98 before January 12, 2013, and LWCC cancelled the policy. On January 14, 2013, the underwriter for LWCC informed a representative of LWCC’s billing department by email that the policy would not be reinstated because this was the third 17cancellation in the current policy period.[3] The underwriter also advised that a new policy was required and that outstanding balances had to be paid.[4]
On January 24, 2013, Mr. Peters was seriously injured on the job.[5]
In finding that the policy was in full force and effect on the date of Mr. Peters’ injury, the OWC stated that although Ray-Bar knew that LWCC considered the policy cancelled, LWCC was in complete control as to how to allocate the funds provided and chose to apply the $8,542.09 to a promissory note obligation instead of applying it to October’s actual premium and November’s estimated premium, which would have kept the policy in effect. The OWC then referenced Louisiana Civil Code article 1864, which provides:
An obligor who owes several debts to an obligee has the right to impute payment to the debt he intends to pay.
The obligor’s intent to pay a certain debt may be expressed at the time of payment or may be inferred from circumstances known to the obligee.
The OWC found that LWCC’s pattern in dealing with Ray-Bar was to allow reinstatement. It also found that because the audit debt was changed to a promissory note, the audit debt became a separate obligation. Further, the OWC stated that because the policy had been reinstated in December after cancellation, that “certainly lulled Ray-Bar into a secure feeling that as long as [it] called and got figures, the policy would remain in effect.” Thus, the OWC concluded, although Ray-Bar did not designate to LWCC how it wanted .the funds allocated, considering the circumstances certainly known to LWCC, LWCC knew that RayBar’s intent was to keep coverage. Accordingly, it found that LWCC received funds to keep the policy in effect, and the policy should never have been cancelled.
Upon our de novo review, we find that the OWC erred in denying LWCC’s motion and in granting the employers’ motions. Even considering the employers’ | ^argument that the installment agreement resulted in a separate debt under LSA-C.C. art. 1864, there was no misapplication of payments. The record establishes that Ray-Bar’s intent was to apply the $8,542.09 to what was owed and what was due in mid-December 2012, when Ms. Brown contacted LWCC to find out what amount was needed “to stay current.” *169 Thus, the $8,542.09 was applied where it was intended, being the past due amount. Although another payment became overdue the day after the payment was applied, the payment made on December 21, 2012, and applied on December 26, 2012, was for the retroactive reinstatement of the policy, which was done. The employers failed to support their argument that the payment should have been applied to the premium that had not yet been reported and was not overdue on the date the December 21, 2012 payment was made. Accordingly, we find that there is no genuine issue of material fact as to whether Ray-Bar’s policy was in full force and effect on the date of Mr. Peter’s accident. Therefore, the OWC erred in denying the motion for summary judgment filed by LWCC and in granting the motions for summary judgment filed by Ray-Bár and by Gilchrist and Travelers.[6]
CONCLUSION
Based on the foregoing, we reverse the OWC’s granting of summary judgment in favor of Ray-Bar and in favor of Gilchrist and Travelers and reverse the denial of the motion for summary judgment filed by LWCC. We render summary judgment in favor of LWCC, finding that Ray-Bar’s workers’ compensation insurance policy was effectively cancelled on January 12, 2013, and was not in full force and effect on the day of Mr. Peter’s work-related accident on January 24,2013; The costs of this appeal are assessed equally to Ray-Bar and to Gilchrist and Travelers.
REVERSED AND RENDERED.

. The summary judgment law was recently ■amended by 2015 La. Acts No, 422, but the provisions of Act 422 do “not apply to any motion for summary judgment pending adjudication or appeal on [January 1, 2016].”

. M.L. Raymond, owner of Ray-Bar, also testified by deposition and stated that “whenever we paid any of them out we were hoping to have those applied to keep coverage.”

.. The record also shows a cancellation and reinstatement of the policy on October 10, 2012.

. A new workers’ compensation insurance policy was subsequently written, effective April 12, 2013.

. In March 2013, Travelers received notice of Mr. Peters’ workers' compensation claim and assumed payment as the insurer of the statutory employer, Gilchrist, after LWCC refused to pay workers' compensation benefits,

. Louisiana Revised Statutes 22:1267 requires that "[n]otice of cancellation based on nonpayment of premium shall be mailed or delivered at least ten days prior to the effective date of cancellation,” ' Neither Ray-Bar nor Gilchrist and Travelers contend that the notice of cancellation • requirements were not met. ■