STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2018 CA 1739

WILLIE WALKER, JIMMIE L. SANDERS, SR., AND
ROSALYN D. WALKER-SANDERS, INDIVIDUALLY AND ON
BEHALF OF THEIR MINOR CHILD, ELIJAWON R. SANDERS

VERSUS

CITY OF INDEPENDENCE POLICE DEPARTMENT,
CITY OF INDEPENDENCE, JOHN DOE, JUSTIN THOMAS,
ABC INSURANCE COMPANY, DEF INSURANCE COMPANY,
AND GEICO CASUALTY COMPANY

consolidated with

NO. 2018 CA 1740

STEVEN WRIGHT

VERSUS

CITY OF INDEPENDENCE POLICE DEPARTMENT,
CITY OF INDEPENDENCE, JOHN DOE,
ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY

* * * * *

On appeal from the
21st Judicial District Court
Parish of Tangipahoa, State of Louisiana
No. 2015-3356 c/w 2015-3482

FEB 0 7 2020

Honorable Elizabeth P. Wolfe, Judge Presiding

* * * * *

J. Neale deGravelles                    Attorneys for Appellants,
Benjamin B. Treuting                    Willie Walker, Jimmie L. Sanders Sr.
Baton Rouge, Louisiana                  and Rosalyn D. Walkers-Sanders,
                                        Individually and on behalf of their
                                        minor child, Elijawon R. Sanders


Michael J. Remondet Jr.                 Attorneys for Appellant,
Michael R. Guidry                       Steven Wright
Lafayette, Louisiana
and
Erik M. Tadda
Jeremy S. Hader
Baton Rouge, Louisiana

Christopher M. Moody  
Albert D. Giraud  
Hammond, Louisiana

Attorneys for Appellee,  
Town of Independence

\* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY AND CRAIN,[1] JJ.

---

[1] Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana Supreme Court.

2

**CRAIN, J.**

The plaintiffs in these consolidated cases appeal a summary judgment dismissing their claims against the Town of Independence. We affirm.

**FACTS**

In the early morning hours of November 22, 2014, Elijawon Sanders, Willie Walker, and Steven Wright were guest passengers in a vehicle driven by Justin Thomas. When an Independence Police Department Patrol Car activated its lights behind Thomas' vehicle, he refused to stop and led the patrol car on a high-speed chase. Thomas lost control of his vehicle while traveling westbound on Highway 40, approaching Interstate 55. The vehicle left the roadway and crashed into a tree, causing serious injuries to the occupants.

The guest passengers instituted these suits for damages against Thomas, the Town of Independence (the Town), the Independence Police Department, and various insurers. The plaintiffs generally allege Thomas began to stop his vehicle after the patrol car activated its lights, when the patrol car "suddenly, violently, and without warning" struck the rear of Thomas's vehicle. They contend Thomas attempted "to avoid further contact with" the patrol car, which began pursuing them. The plaintiffs aver the patrol car struck Thomas's vehicle a second time, shortly after the initial impact, which caused Thomas to lose control of the vehicle and crash.

The Town filed a motion for summary judgment, contending the plaintiffs would be unable to prove the officer's actions were a proximate cause of the accident. They alleged the officer in question, Eloise Jones, testified she attempted to stop Thomas's vehicle after it ran a stop sign. Jones stated Thomas did not stop when she activated her patrol car's lights, and she followed, at one time traveling in excess of sixty miles per hour. She explained she lost sight of the vehicle when it turned around on the interstate entrance ramp and notified dispatch she had discontinued her pursuit. She stated she later came upon the scene of the accident,

3

explaining Thomas had run off the road for some distance before hitting a tree. The Town submitted other evidence in support of its position that Officer Jones was not in pursuit or even present when Thomas, who was driving at an excessive rate of speed, left the roadway and struck the tree. The Town further contends the plaintiffs have produced no admissible sworn testimony to support their allegation that Officer Jones rammed Thomas's vehicle before the accident.

The plaintiffs opposed the motion, arguing there are genuine issues of material fact as to numerous issues, including the cause and reasonableness of the police chase, whether Officer Jones's vehicle rammed Thomas's vehicle, whether Officer Jones acted with reckless disregard, and whether the Town was negligent in hiring and training Officer Jones. The plaintiffs submitted evidence, including the affidavit and incorporated expert report of former California police officer, Jeffrey J. Noble, identified by the plaintiffs as "an expert in various fields related to policing." They contended Noble's affidavit and report show genuine issues of material fact as to "a myriad of issues." They argued Noble's affidavit and report "clearly show that his expert opinion is that the dangerous high-speed chase initiated and continued by Officer Jones was the proximate cause, and/or a substantial contributing factor in causing the . . . accident." They further argued the affidavit and expert report supported their claims based, not only on Officer Jones's negligence, but the Town's independent negligence for the hiring, training, retaining, and supervising of Officer Jones.

In its reply memorandum, the Town objected to Noble's affidavit and expert report insofar as they set forth findings related to causation. The Town pointed out Noble is not an expert in accident reconstruction, and argued his opinion on causation exceeded his identified field of expertise. The Town argued any of Noble's findings on the issue of causation should be excluded. The trial court continued the initial hearing on the motion for summary judgment, later explaining

4

the continuance was "so all parties could brief the issue regarding Mr. Noble and the [c]ourt could ascertain his expertise as to the facts of this case under *Daubert* and [Louisiana Code of Evidence article] 702."

The plaintiffs then filed a lengthy memorandum opposing the Town's challenge to Noble's expertise, stating they objected to the Town improperly raising the challenge in an untimely reply memorandum. On the merits, the plaintiffs argued Noble's methodology was reliable and the Town's challenge should be denied. The plaintiffs further claimed Noble was "patently qualified as an accident reconstruction expert," pointing to Noble's police experience. The plaintiffs argued Noble's affidavit and report should be considered and the Town's motion for summary judgment should be denied.

To the memorandum, the plaintiffs attached new evidentiary support, including the affidavit and expert report of accident reconstructionist and biomechanics consultant, Dr. Rajeev Kelkar. The plaintiffs argued that like Noble, Dr. Kelkar concluded the police pursuit did not stop and was a substantial contributing factor in causing the accident. The plaintiffs additionally argued the two experts were able to rely on each other's conclusions. The plaintiffs stated the Town's challenge caused them to convert Dr. Kelkar "from a non-discoverable consulting expert to a now-discoverable testifying expert." The plaintiffs explained they presented Dr. Kelkar's affidavit and expert report "as a belt-and-suspenders cautionary measure" for the purpose of showing "the reliable nature of Mr. Noble's opinions."

The Town responded with a supplemental memorandum, restating its objections to Noble presenting an expert opinion on causation, and further objecting to the newly-presented expert opinion of Dr. Kelkar. The Town argued the plaintiffs were granted only limited leave of court to file a memorandum addressing the objection to Noble's ability to give a causation opinion, and offering a wholly new

5

expert exceeded the scope allowed. The Town asked the trial court to strike Dr. Kelkar's opinions, but argued that if that request was denied, it was nonetheless entitled to summary judgment because there was no actual evidence Officer Jones acted with reckless disregard or was at fault for failing to follow department procedure.

After a hearing, the trial court granted the Town's motion for summary judgment. In written reasons for judgment, the trial court explained it did not accept Noble as an expert on the causation of the accident. The trial court further explained it did not consider Dr. Kelkar's affidavit because it was improperly offered beyond the scope of the briefing allowed following the continuance. Based on the evidence presented, the trial court found the plaintiffs could not prove Officer Jones's actions were a proximate or legal cause of the accident. The trial court signed a judgment granting the motion for summary judgment and dismissing the plaintiffs' claims against the Town with prejudice. The plaintiffs now appeal.

## DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. Pro. art. 966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that governs the trial court's determination of whether summary judgment is appropriate.[2] *In re Succession of Beard*, 13-1717 (La. App. 1 Cir. 6/6/14), 147 So. 3d 753, 759-60.

---

[2] Our *de novo* review renders moot the plaintiffs' arguments that the trial court improperly weighed the evidence and made credibility determinations.

6

The burden of proof on the motion rests with the mover; however, if the mover will not bear the burden of proof at trial on the issue raised in the motion, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover's burden is to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Upon doing so, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966D(1).

A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett,* 04-0806 (La. 6/25/04), 876 So. 2d 764, 765 *(per curiam)*; *Smith v. Our Lady of the Lake Hospital, Inc.,* 93-2512 (La. 7/5/94), 639 So. 2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines,* 876 So. 2d at 765-66; *Smith,* 639 So. 2d at 751. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. *Bryant v. Premium Food Concepts, Inc.,* 16-0770 (La. App. 1 Cir. 4/26/17), 220 So. 3d 79, 82, *writ denied,* 17-0873 (La. 9/29/17), 227 So. 3d 288.

In a personal injury suit, liability is determined under the duty-risk analysis, which requires that the plaintiffs prove (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant failed to conform his conduct to the appropriate standard of care, (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs' injuries, (4) the defendant's substandard conduct was a legal cause of the plaintiffs' injuries, and (5) actual damages. *Brewer v. J.B. Hunt*

*Transport, Inc.*, 09-1408 (La. 3/16/10), 35 So. 3d 230, 240. If the plaintiffs fail to establish any one of these elements as to a particular defendant, their claims against that defendant must fail and the plaintiffs cannot recover against them. *Roberts v. Rudzis*, 13-0538 (La. App. 1 Cir. 5/28/14), 146 So. 3d 602, 609, *writ denied*, 14-1369 (La. 10/3/14), 149 So. 3d 797.

The Town sought summary judgment, arguing the plaintiffs would be unable to establish the causation element of their claims. The cause-in-fact element requires a determination of whether the harm would have occurred but for the defendant's alleged substandard conduct, or, when concurrent causes are involved, whether the defendant's conduct was a substantial factor in bringing about the harm. *Granger v. Christus Health Central Louisiana*, 12-1892 (La. 6/28/13), 144 So. 3d 736, 766; *Blake v. City of Port Allen*, 14-0528 (La. App. 1 Cir. 11/20/14), 167 So. 3d 781, 789. In support of its motion, the Town submitted numerous exhibits, including deposition testimony of Officer Jones; Deputy Tom Davidson, who was dispatched to the accident scene; four individuals who lived near the accident scene; Thomas, the driver of the car in which the plaintiffs were riding; and two of the plaintiffs.

Officer Jones testified Thomas's vehicle refused to stop after she activated her patrol car's lights, though it pulled off the roadway three times. She followed, in excess of the posted speed limit, westbound on Highway 40, intermittently sounding her siren. As she proceeded across the interstate overpass, she saw the vehicle heading back toward her, and surmised the vehicle ran into the ditch and turned around. By the time she turned her patrol car around, she could no longer see the vehicle. She patrolled the area, travelling approximately twenty-five to thirty miles per hour, and to her right saw taillights disappearing over a distant bridge on Crossover Road. Officer Jones backed up and turned in that direction. She crossed the bridge, which she described as "a good little piece" down the road, and rounded a curve when she heard someone shouting for help. She stopped, saw the vehicle

8

crashed into the tree, and called the sheriff's office for help. Officer Jones maintained the pursuit had ended and she was traveling no more than thirty miles per hour on Crossover Road.

Deputy Davidson testified he was on duty and responded to a radio communication of an accident on Crossover Road. He arrived at the scene within twenty to thirty minutes and observed tracks indicating the vehicle left the roadway, crossed a driveway, went airborne partially across a ditch, struck a second driveway that had been reinforced with concrete bags, rotated approximately 160 degrees, struck a tree, then rebounded twelve to fifteen feet. According to his notes, the vehicle traveled more than one hundred feet after leaving the roadway.

Larry Robertson, Terry Fleming, Renee Fleming, and Rachel Fleming each testified they lived near the scene and were awakened by the sound of the crash. Larry Robertson stated he dressed, then looked out his door and saw the vehicle against the tree, but saw no other vehicles in the area besides his own. He went out to the vehicle and "shortly after that" a police unit pulled up. He indicated it was not traveling fast and did not have its flashing lights activated. He then went to the vehicle to render assistance.

Terry Fleming testified she lived on Crossover Road since she was a child and several accidents occurred in that curve in the road, so upon hearing the noise she immediately knew there was an accident. She ran outside and saw what she described as "a horrific scene." A man covered in blood was walking toward her and a vehicle was against the tree with three passengers still inside. An Independence Police unit arrived "[n]ot very long" after.

Renee Fleming testified she woke to the sound of the crash, dressed, then ran outside of her Crossover Road home. She saw a vehicle crashed into a pine tree in her yard. She saw no other vehicles around. One passenger exited the vehicle and was bleeding, so she returned inside for gloves and towels. She could not recall

9

whether the police unit was present before she returned inside, but felt certain it was there when she came out with the gloves. She stated the vehicle against the tree did not have its lights on and the police unit drove by the scene and had to be flagged down by a neighbor. She recalled the officer referencing the possibility of litigation and that "they were claiming that [the officer] hit them and rammed them into – and caused the accident." However, she observed no damage to the front end of the police unit.

Rachel Fleming testified she was awakened by a loud noise and assumed an accident occurred based on her knowledge of prior accidents in the area. She ran outside and saw a smoking vehicle against the tree, with wreckage scattered across the yard and in the ditch. She ran to the vehicle and described it as "like somebody put a bomb in it." A police vehicle without its siren or flashing lights activated arrived, but she could not recall the timing.

Thomas testified he was driving the passengers home and remembers seeing police lights and spinning in a circle, but could not remember much else. He could not answer where he was driving when he saw the lights or where they were in relation to his vehicle. He testified there was no reason he would not have pulled over after seeing police lights. He could not remember any of the passengers telling him to pull over or not to pull over. He remembered saying he was scared, but did not know what he was scared of or whether any of the passengers responded. He testified two passengers later told him the police car hit them. When asked to clarify which passengers told him that, he said Willie Walker definitely did. Thomas testified he pled guilty to negligent injury and reckless operation following the accident, and was sentenced to one year of probation.

Elijawon Sanders, one of the plaintiffs and a guest passenger in Thomas's vehicle, testified police lights appeared behind them just after they pulled out of a friend's driveway onto Highway 40. He stated Thomas began to pull over and he

10

felt "a thud" that caused his body to shift. He could not remember if he felt the thud when the car was still moving or how long after seeing the lights it occurred, and admitted he had no personal knowledge of its cause. Sanders testified he blacked out, explaining, "As I felt the thud, the dark screen was going over my eyes." He later confirmed he had no personal knowledge of what caused the thud.

Steven Wright, another of the plaintiffs and also a guest passenger in Thomas's vehicle, testified he was in a coma for two months after the accident. He stated he was asleep in the vehicle and had no personal knowledge of the accident. He remembered only opening his eyes as the vehicle was "going down, like, a hill," then closing his eyes as hard as he could. The next thing he remembers is waking up in the hospital.

Considering the evidence presented, the Town met its burden of pointing out the absence of factual support for an essential element of the plaintiffs' claims. Officer Jones' testimony that she discontinued her pursuit was uncontradicted; the witnesses testified she arrived on the scene after the vehicle struck the tree and neighbors had time to wake, dress, and run outside. Further, none of the vehicle occupants had independent knowledge of the patrol car ramming Thomas's vehicle. The burden of proof thus shifted to the plaintiffs to produce factual support sufficient to establish the existence of a genuine issue of material fact. *See* La. Code Civ. Pro. art. 966D(1).

In opposition to the motion for summary judgment, the plaintiffs submitted evidence, including Noble's affidavit and expert report. The Town challenged Noble's ability to offer an expert opinion on causation and, after the trial court continued the initial summary judgment hearing, the plaintiffs submitted the affidavit and expert report of Dr. Kelkar. On appeal, the plaintiffs complain the trial court erred in refusing to consider the evidence of their experts, which they argue establish causation and preclude summary judgment.

11

The summary judgment procedure provides that objections to any documents submitted in support of or in opposition to a motion for summary judgment "shall be raised in a timely filed opposition or reply memorandum."[3] La. Code Civ. Pro. art. 966D(2). When an objection is made in accordance with Article 966D(2), the only issue to be determined is whether the affidavit complies with Louisiana Code of Civil Procedure article 967. *Mariakis v. North Oaks Health System*, 18-0165 (La. App. 1 Cir. 9/21/18), 258 So. 3d 88, 95. Article 967A provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702,[4] and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

The trial court is not required to hold a *Daubert* hearing pursuant to Louisiana Code of Civil Procedure article 1425; rather, the trial court is required to make a threshold determination of whether the expert's affidavit is admissible under Article 967A and Article 702. *See Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.*,

---

[3]    The plaintiffs' argument that the Town's objection to Noble's affidavit constituted a new substantive argument improperly raised in the Town's reply memorandum is without merit. In fact, the objection was made through the only means a party may object to the consideration of an expert's affidavit on a motion for summary judgment. *See* La. Code Civ. Pro. art. 966D(2). However, the plaintiffs correctly point out the reply memorandum was not filed and served at least five days prior to the original hearing on the motion, as required by Article 966B(3). The trial court's written reasons for judgment acknowledge the plaintiffs' argument on this point and state the hearing was continued so all parties could brief the issue. Considering this, we find no error in the trial court's consideration of the objection at the rescheduled hearing.

[4]    Article 702 codified the standards for admissibility of expert testimony established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Freeman v. Fon's Pest Management, Inc.*, 17-1846 (La. 2/9/18), 235 So. 3d 1087, 1089; *Cordell v. Tanaka, LLC*, 17-0285, 2018WL301331, *3 (La. App. 1 Cir. 1/4/18), *writ denied*, 18-0235 (La. 4/6/18), 239 So. 3d 827. That is, an expert witness may testify in the form of an opinion if (1) the witness's expertise will help the trier of fact to understand the evidence or to determine a fact in issue, (2) the testimony is based on sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the expert has reliably applied the principles and methods to the facts of the case. *See Daubert*, 509 U.S. at 589-595, 113 S.Ct. at 2795-98; *Freeman*, 235 So. 3d at 1089-90.

12

17-1088 (La. App. 1 Cir. 3/15/18), 244 So. 3d 441, 447, *writ denied*, 18-0583 (La. 6/1/18), 243 So. 3d 1062. Here, the Town argued Noble was not competent to testify on the issue of causation of the accident, which required the trial court to determine whether a *prima facie* showing of competency was made so as to allow consideration of the affidavit. *See* La. Code Civ. Pro. art. 967A.

In his affidavit, Noble attests he is the former Deputy Chief of Police of the Irvine, California Police Department and former Interim Deputy Chief for another California police department, with twenty-five years of police service during which he held a wide range of assignments. He explains he has extensive experience conducting internal administrative investigations "on a wide range of issues," specifically including vehicle pursuits. Noble is also a law school graduate. Attached to the affidavit is Noble's curriculum vitae, which delineates his police experience, education, publications, selected professional activities, and professional affiliations. It further sets forth his experience as a consultant and expert witness from 2005 to the present, listing 86 cases in which he was involved, and describing his role as:

> Provide consulting and expert witness services on a wide range of law enforcement and personnel issues including misconduct, corruption, use of force, workplace harassment, pursuits, police administration, training, police operations, criminal and administrative investigations, interviews and interrogations, civil rights violations, police procedures, and investigations.

In his affidavit, Noble states he reviewed "various pleadings filed in this matter, including the Plaintiffs' Petition for Damages, First Supplemental Amending Petition for Damages, a Motion for Summary Judgment and supporting memorandum of law," as well as "numerous discovery responses and documents produced pursuant to the discovery process, the dispatch tape from the date and time of the incident, and approximately nine (9) depositions."[5] Based on that review,

---

[5] Noble identifies the particular documents in his expert report attached to the affidavit.

13

Noble formed an expert opinion that Officer Jones acted in reckless disregard of the risk of serious injury or death by engaging in a high-speed chase after a minor traffic infraction. Noble states that the evidence contradicts Officer Jones' version of events; however, even if her patrol car did not impact Thomas's vehicle, her actions fell below acceptable police standards, as did her hiring and retention. Noble concludes "Any one of the issues was more likely than not, a significant contributing factor in bringing about the accident and/or more probably than not, causing the accident that is the basis of the instant lawsuit."

The trial court found that Noble appeared imminently qualified to testify about police work and procedures, but was not qualified to testify as an expert as to the cause of the accident. The trial court reasoned Noble's expertise did not strictly relate to accident reconstruction, and Noble did not reconstruct the accident based on his expertise. We agree. Noble's affidavit does not sufficiently establish his competency to render an opinion on what caused the accident. Consequently, the affidavit is speculative as to his conclusion regarding causation and cannot be considered on the motion for summary judgment. *Cf. Cupit o/b/o Cupit v. Twin City Fire Ins. Co.*, 17-918 (La. App. 3 Cir. 3/14/18), 240 So. 3d 993, 1001-02.

The plaintiffs further contend the trial court erred in refusing to consider the affidavit and expert opinion of accident reconstructionist Dr. Kelkar, which they submitted before the rescheduled hearing. We find no error in the trial court's ruling. The trial court acted within its discretionary authority to continue the first hearing. *See* La. Code Civ. Pro. art. 966C(2) (providing the court may order a continuance of the hearing on the motion for summary judgment for good cause shown). Although the trial court had the discretion to allow affidavits to be supplemented by depositions, answers to interrogatories, or by further affidavits, it was not required to do so. *See* La. Code Civ. Pro. art. 967A; La. Code Civ. Pro. art. 5053 (providing the word "may" is permissive). According to the trial court's written reasons for

14

judgment on the motion for summary judgment, the parties were authorized only to file additional memoranda addressing Noble's expert qualifications before the rescheduled hearing. The record provides no basis for finding the trial court's ruling was erroneous.[6] *Cf. Reed v. Restorative Home Health Care, LLC*, 52,645 (La. App. 2 Cir. 6/5/19), 281 So. 3d 788, 798 (on rehearing) (discussing the trial court's ability to close the record and disregard evidence submitted beyond the scope of a continuance order).

The plaintiffs argue the remaining evidence, including Noble's expert opinion on police policies and procedures that was not excluded, establishes genuine issues of material fact that preclude summary judgment. In addition to the expert opinion evidence, the Town submitted deposition testimony of Wright, Thomas, Officer Jones, Deputy Davidson, Renee Fleming, Terry Fleming, and Sanders. The plaintiffs also submitted medical records of Sanders and Walker; Walker's affidavit and responses to interrogatories propounded by the Town; and correspondence between counsel establishing Walker's current whereabouts are unknown. The plaintiffs argue the evidence they presented reveals factual disputes about the reasonableness of Officer Jones's decision to institute the police chase, the details of the police chase, and whether there was impact between the vehicles. On the issue of causation, the plaintiffs argue "copious evidence" establishes the police chase occurred continuously and did not cease until the time of the accident. The plaintiffs specifically point to Walker's affidavit that confirmed his response to an interrogatory about the cause of the accident and Noble's expert report.

---

[6]   We do not reach the issue of whether supplementation with the affidavit of a second expert is appropriate under Article 967A.

15

Walker attested to the accuracy of the following response he gave to the interrogatory questioning how, when, and where the accident occurred, with the strikethrough appearing in his affidavit:[7]

> Subject to the [stated] objections and without waiver [of] same, plaintiff answers: Elijawon Sanders, Justin Thomas, Stephen Wright and himself were leaving the house located off of Highway 40. As they entered onto Highway 40 and were heading toward the interstate, plaintiff saw the shadow of police lights. A couple of seconds after seeing the shadow of police lights, the car plaintiff was traveling in was rammed from the back. The force of this ramming sent the vehicle plaintiff was riding in into the ditch. ~~After exiting the ditch, the vehicle plaintiff was riding in turned onto Crossover Road. The vehicle plaintiff was traveling in was then rammed for a second time from the rear.~~ Plaintiff does not remember what happened during the wreck. When plaintiff "came to" following the accident, he believed he heard someone saying the car was on fire. Plaintiff tried to grab Elijawon but was unable to do so. Plaintiff also tried to grab Justin Thomas but was unable to do so. Plaintiff then remembers the ambulance arriving on the scene and instructing the ambulance to get the remaining passengers out of the vehicle.

In addition to his conclusions regarding causation, Noble attested that Officer Jones acted with reckless disregard of the risk to the plaintiffs when she engaged in the high speed chase and concluded her actions fell below acceptable standards for police officers. In his expert report, Noble identified several bases for questioning Officer Jones' credibility. Noble also indicated the crash occurred approximately one mile down the road from Highway 40 and it is likely Thomas believed he was still being pursued. Noble offers no factual support for this speculative statement regarding what he thinks Thomas believed.

While the plaintiffs have shown factual issues regarding the origin of the pursuit, the evidence submitted by the plaintiffs on the issue of causation is purely speculative. Although factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a

---

[7] In a memorandum filed with the trial court, the plaintiffs explained the two sentences with the strikethrough were removed from the discovery response prior to the execution of Walker's affidavit.

genuine issue of material fact. *See Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So. 2d 1049, 1050 (*per curiam*); *Guillory v. The Chimes*, 17-0479 (La. App. 1 Cir. 12/21/17), 240 So. 3d 193, 195. The plaintiffs have not established they will be able to prove Officer Jones's actions or the Town's alleged failure in employing Officer Jones caused Thomas to crash his vehicle into a tree and injure the plaintiffs.[8] Consequently, the Town is entitled to summary judgment dismissing the plaintiffs' claims against it.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Willie Walker; Jimmie L. Sanders Sr. and Rosalyn D. Walker-Sanders, individually and on behalf of their minor child, Elijawon R. Sanders; and Steven Wright.

**AFFIRMED.**

---

[8] The plaintiffs' argument that the trial court rendered judgment beyond the scope of the motion for summary judgment in dismissing the claims based on the Town's independent negligence is without merit. Both the claims based on Officer Jones's negligence and the independent negligence of the Town require proof of causation. The motion for summary judgment placed that element of all claims against the Town before the court; therefore, the trial court did not err in the scope of its judgment.

17

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2018 CA 1739

WILLIE WALKER, JIMMIE L. SANDERS, SR., AND
ROSALYN D. WALKER-SANDERS, INDIVIDUALLY AND ON
BEHALF OF THEIR MINOR CHILD, ELIJAWON R. SANDERS

VERSUS

CITY OF INDEPENDENCE POLICE DEPARTMENT,
CITY OF INDEPENDENCE, JOHN DOE, JUSTIN THOMAS,
ABC INSURANCE COMPANY, DEF INSURANCE COMPANY,
AND GEICO CASUALTY COMPANY

consolidated with

NO. 2018 CA 1740

STEVEN WRIGHT

VERSUS

CITY OF INDEPENDENCE POLICE DEPARTMENT,
CITY OF INDEPENDENCE, JOHN DOE,
ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY

**GUIDRY, J., dissents and assigns reasons.**

**GUIDRY, J., dissenting.**

I respectfully disagree with the majority opinion. I find that based on the entire record before us, there are genuine issues of material fact in regards to whether or not the initial pursuit by Officer Jones was improper, whether it was ongoing, whether there was physical contact between the Thompson vehicle and Officer Jones' police unit, and the actions that caused and/or substantially contributed to the crash. Further, even if her pursuit had ended, there is still a question as to but for the initial pursuit, would the accident have occurred; a question that should be considered by the trier of fact. See Blake v. City of Port Allen, 14-0528 (La. App. 1 Cir. 11/20/14), 167 So. 3d 781, 789, noting that "[t]he

1

determination to be made is whether the harm would have occurred but for the defendant's alleged substandard conduct, or, when concurrent causes are involved, whether the defendant's conduct was a substantial factor in bringing about the harm".

Further, I would find that Mr. Noble's affidavit should have been considered for summary judgment on the issue of causation. It should have also been considered from a policy and procedure standpoint. It is improper to weigh evidence and to make credibility determinations on summary judgment, and construing the factual determinations reasonably drawn from the evidence in favor of the party opposing the motion in this matter upon de novo review, I would reverse the granting of summary judgment herein.