STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0530

KENNETH TRONCOSO AND GAIL TRONCOSO

VERSUS

POINT CARR HOMEOWNERS ASSOCIATION ET AL

*Judgment Rendered:* **IJAN 1 0 2023**

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2011-13315

The Honorable John A. Keller, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Wayne A. Collier<br>Slidell, Louisiana | Counsel for Plaintiffs/Appellants<br>Kenneth Troncoso and<br>Gail Troncoso |
| Clint L. Pierson, Jr.<br>Covington, Louisiana<br>and<br>Patricia R. Fox<br>Covington, Louisiana | Counsel for Defendants/Appellees<br>Point Carl Estates Subdivision<br>Homeowners Association,<br>Patricia Childress, Michael<br>Bearden, Richard Capdebosq, Jr.,<br>Lesley Capdebosq, and William<br>Edgett |

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Hester J., concurs

**THERIOT, J.**

This appeal arises from a trial court judgment denying plaintiffs' motion for partial summary judgment, granting defendants' motion for summary judgment, and dismissing plaintiffs' suit. For the reasons that follow, we reverse the portion of the trial court judgment that granted summary judgment in favor of the defendants and dismissed the plaintiffs' suit.

## FACTS AND PROCEDURAL HISTORY

On March 15, 2002, Kenneth and Gail Troncoso purchased one of ten individual numbered lots in Point Carr Estates Subdivision from the developer, Waterfront Developers, LLC, for $175,000.00. The property purchased by the Troncosos is identified as "Lot 9."

In January 2008, Richard Capdeboscq, Jr., owner of Lots 2 and 4, filed Articles of Incorporation for the Point Carr Estates Subdivision Homeowners Association ("HOA"), a Louisiana non-profit corporation. The Articles of Incorporation provided that the initial officers of the corporation would be Richard Capdeboscq, Jr., President, and his wife, Lesley Capdeboscq, Secretary/Treasurer, and the initial Board of Directors of the corporation would be composed of Richard and Lesley Capdeboscq. The Articles of Incorporation further provided that "[e]ach person . . . who acquires, through purchase, donation, exchange, or other conveyance, a residential lot in Point Carr Estates Subdivision shall be a member of this corporation, and by virtue of such acquisition shall be deemed to have consented to join the corporation and consent to be bound by all the terms, conditions and provisions set forth herein and in the By-Laws as adopted by the Board of Directors."

The Board of Directors of the HOA adopted By-Laws on September 24, 2008, which purported to apply to "[a]ll present or future owners, lessees, invites, tenants, or occupants of the Point Carr Estates Subdivision property as more fully set out in the Restrictive Covenants of the Point Carr Estates Subdivision . . . or any other

2

individual who may use the facilities or come upon the Point Carr Estates Subdivision property in any manner." Also on September 24, 2008, seven individual lot owners in Point Carr Estates Subdivision appeared before a notary and witnesses and executed a document entitled "Dedication of Servitudes, Easements, and Restrictive Covenants of Point Carr Estates" ("Restrictive Covenants").[1]

The property declared to be subject to the Restrictive Covenants (the "Property") was defined in the document as:

> ALL THAT CERTAIN PARCEL OF LAND in Section 25 and 26, Township 9 South, Range 13 East, St. Tammany Parish, Louisiana, more fully described as follows:
>
> Commencing at the Northwest corner of Lot 5 Northshore Beach Subdivision at the westerly right of way line of Carr Drive being the POINT OF BEGINNING,
> go South 60 degrees 32 minutes 27 seconds West – 239.60 feet to a point;
> thence go North 30 degrees 16 minutes 37 seconds West – 547.76 feet to a point;
> thence go North 47 degrees 53 minutes 13 seconds East – 132.27 feet to a point;
> thence go North 79 degrees 16 minutes 47 seconds East – 219.06 feet to a point;
> thence go North 30 degrees 05 minutes 39 seconds East – 506.36 feet to a point;
> thence go South 60 degrees 32 minutes 47 seconds West – 94.69 feet to the POINT OF BEGINNING. Containing in all 4.23 acres of land.

The Property, as defined in the Restrictive Covenants, included all ten lots in the Point Carr Estates Subdivision, including Lot 9. The Restrictive Covenants declared that the Property "shall be held, conveyed, hypothecated and encumbered, sold, used, occupied, and improved subject to the servitudes, privileges, and restrictions hereinafter set forth." They further provided that those servitudes, privileges, and restrictions "shall be deemed to run with the land and shall be binding upon the [HOA], the [HOA's] successors, assigns and liquidators, and shall inure to

---

[1] The Restrictive Covenants were signed by Matthew McElveen (Lot 1); Richard and Lesley Capdeboscq (Lots 2 and 4); William Edgett (Lot 3); Darryl Tedesco (Lot 6); Patricia F. Childress (Lot 7); and Michael Bearden (Lot 8) (collectively, the "individual defendants"). Although McElveen, Edgett, Tedesco, and Bearden each purchased their respective lots with a spouse or former spouse, the spouses or former spouses did not sign the Restrictive Covenants.

the benefit of and be enforceable by the [HOA], its successors, assigns, and liquidators, and further shall be enforceable by the [HOA] or any person acquiring or owning any part or parcel of [t]he Property." Article IV of the Restrictive Covenants, entitled HOMEOWNERS ASSOCIATION, declared that "each and every Lot Owner, by accepting a deed and purchasing a Lot or entering into a contract with regard to any Lot in the POINT CARR ESTATES SUBDIVISION does hereby agree to and binds himself to be a Member of and be subject to the obligations and duty [sic] enacted By-Laws and rules, if any, of the [HOA]." The By-Laws (Instrument # 1700255) and Restrictive Covenants (Instrument # 1700257) were filed for registry in the conveyance records for St. Tammany Parish on September 26, 2008.

On December 31, 2010, the Troncosos executed a "Louisiana Residential Agreement to Buy or Sell" to sell Lot 9 to Richard and Yvette Warren for $130,000.00 (the "Warren purchase agreement"). Although the Warren purchase agreement initially included a predication clause that conditioned the sale on HOA approval of the Warrens' plans to build a 1,900 square foot house on Lot 9, this predication clause was removed by an amendment to the agreement dated January 4, 2011. The Warren purchase agreement provided that the act of sale would be executed on or before February 9, 2011, subject to a ten-day extension in the event curative title work was necessary. The Warrens did not appear at the scheduled act of sale. The Troncosos allege that one of the reasons they were given for the Warrens' refusal to complete the purchase of Lot 9 was the potential effect of the By-Laws and Restrictive Covenants recorded against the property.

On March 9, 2011, counsel for the Troncosos sent an amicable demand letter to the HOA and individual defendants regarding the "Disturbance in Possession" created by the recording of the By-Laws and Restrictive Covenants against Lot 9. The letter stated that the Troncosos "demand that their property be released," and

4

further stated that "[t]itle insurers have agreed that the attached Partial Release executed and notarized by all of the individuals who signed and the [HOA] will clear title." The letter requested that the recipients deliver the executed release to counsel for the Troncosos by March 17, 2011, and stated that if the Partial Release was not executed or if the Troncosos did not "receive a clear title policy," suit would be filed and a preliminary injunction set for hearing.

A "Partial Release of Dedications of Servitudes, Easements and Restrictive Covenants by Point Carr Estates Subdivision Homeowners Association and By-Laws" ("Partial Release") was executed before a notary and witnesses on March 15, 2011 by Richard Capdeboscq, Jr., individually and as authorized agent for the HOA; Lesley Capdeboscq; Childress; and Tedesco. The Partial Release states that "[HOA] and Individuals caused Instrument # 1700255 bearing Registry # 1864037 [By-laws] and # 1700257 bearing Registry # 1864040 [Restrictive Covenants] to be recorded in the public records for St. Tammany Parish on September 26, 2008," and "[HOA] and Individuals wish to release a portion of the Property," specifically Lot 9. Three of the individual defendants who signed the Restrictive Covenants did not sign the Partial Release: McElveen, Edgett, and Bearden. The Partial Release was recorded on June 8, 2011, with the missing signatures noted, as Instrument # 1814019 bearing Registry # 2069759.

On June 8, 2011, after negotiations with the Warrens were unsuccessful and they refused to execute the act of sale, the Troncosos filed a "Petition for Damages Arising from a Real Estate Contract" in the Twenty-Second Judicial District Court against the Warrens and their realtor (the "Warren suit"), seeking specific performance, damages, and attorney fees. The Warren suit was assigned to Division H.

Also on June 8, 2011 (the same date the Troncosos filed the Warren suit), the Troncosos filed the instant suit ("HOA suit") in the Twenty-Second Judicial District

Court. The HOA suit, which was assigned to Division D, was styled as a possessory action and suit for preliminary injunction against the HOA and the individual defendants who signed the Restrictive Covenants, i.e., Richard Capdeboscq, Jr., Matthew McElveen, Patricia F. Childress, William Edgett, Michael C. Bearden, Daryl Tedesco, and Lesley Capdeboscq.[2] In the HOA suit, the Troncosos alleged that the HOA and individual defendants caused a disturbance in law of their possession of Lot 9 by executing and filing the Restrictive Covenants and By-Laws for recordation, and further alleged that the recordation of these instruments against Lot 9 caused them to lose the $130,000.00 cash sale to the Warrens. In addition to a judgment of possession and damages for the disturbance of their possession, the Troncosos sought an injunction to remove the Restrictive Covenants and By-Laws from the public records against Lot 9.

The parties to the HOA suit entered into a consent judgment on September 20, 2011, pursuant to which the Troncosos' request for a preliminary and permanent injunction was granted, the defendants were enjoined from asserting any petitory claims encumbering Lot 9, and the inscriptions bearing Instrument # 1700257 (Restrictive Covenants) and # 1700255 (By-Laws) against Lot 9 were forever cancelled. The defendants reserved all defenses and did not admit any liability to the Troncosos.

On December 30, 2013, the Troncosos' claims against the Warrens in the Warren suit were dismissed on summary judgment. In written reasons for judgment, the trial court found that the Warrens had pointed out an absence of factual support for an essential element of the Troncosos' claim for breach of the purchase agreement, i.e., that the Troncosos would be able to tender merchantable title within the time period set forth in the purchase agreement. The trial court found that the

---

[2] The Troncosos also named as a defendant, "ABC [I]nsurance who provides insurance to the defendants for the liability to plaintiffs."

Warrens carried their burden on the motion through the expert opinion of Julian J. Rodrigue, Jr., a real estate attorney and licensed title insurance agent, that the Troncosos did not have merchantable title to Lot 9 on the date specified for closing in the Warren purchase agreement, nor did they have merchantable title at the termination of the ten-day curative period. Finding that the Troncosos failed to present evidence in opposition to the motion to show that they would be able to satisfy their burden of proving that they were able to tender merchantable title on the prescribed dates, the trial court granted the Warrens' motion for summary judgment and dismissed the Troncosos' claims against the Warrens.

The Troncosos amended their petition in the HOA suit on June 24, 2014 to specifically allege that the Warrens "refused to proceed to sale because the recorded instruments asserted the property was subject to restrictions in favor of a homeowners association," and the Warrens "would not purchase the property with the recorded instruments of record." The Troncosos claimed that in addition to the loss of the sale proceeds, they incurred costs and expenses as a result of the lost sale. The Troncosos also alleged that "the execution with the intent to file and the filing of the instrument by the [HOA] and individual defendants who signed as Owners is a disturbance in law," and they sought damages resulting from the unlawful recordation, including costs and attorney fees.[3]

The Troncosos amended their petition again on September 8, 2015, reasserting the allegations of their prior amended petition and adding additional allegations, including allegations of fraud and misrepresentation. The Troncosos alleged that the Restrictive Covenants constitute fraud and misrepresentation in that they purport to apply to all lot owners and all lots in Point Carr Estates Subdivision, including the lot owners who did not sign the Restrictive Covenants and the lots

---

[3] On August 31, 2015, the trial court sustained an exception of no cause of action filed by McElveen as to the Troncosos' claim for attorney fees and gave the Troncosos fifteen days to amend their petition to cure the exception.

owned by those non-signors. The Troncosos further alleged that the defendants knew or should have known that the Restrictive Covenants were by their terms going to be recorded against Lot 9. The Troncosos also alleged that some or all of the defendants were aware that the Troncosos had a potential buyer for Lot 9,[4] who planned to construct a home that was smaller in size than the defendants would prefer, and that those defendants prepared and filed the Restrictive Covenants and By-Laws for the purpose of interfering with that sale. The Troncosos further alleged that the HOA and individual defendants were given an opportunity to avoid litigation by assuring the potential buyer that their home would be approved if they proceeded to sale, but the HOA and individual defendants instead stated that the restrictions would be enforced and the home would not be approved. The Troncosos alleged that as a result of the actions of the HOA and the individual defendants, they suffered actual monetary damages, as well as consequential damages, and were required to file litigation, incurring costs and attorney fees.

Defendants McElveen and Tedesco filed a motion for summary judgment on June 4, 2019, urging that the Troncosos lacked factual support for their assertions that the recording of the Restrictive Covenants caused the loss of the sale to the Warrens or that they suffered any damages at all as a result of the recording of the Restrictive Covenants. They also urged that the Troncosos' claims in the HOA suit should be barred by the doctrine of judicial estoppel because the Troncosos presented a contradictory argument in the Warren suit, which has been litigated to its conclusion. Specifically, McElveen and Tedesco argued that the Troncosos should be bound by their assertion in the Warren suit that the Restrictive Covenants were not binding on Lot 9. In support of their motion, McElveen and Tedesco filed

---

[4] Although the Troncosos did not name the potential buyer referred to in this amended petition, these allegations do not appear to refer to the Warrens.

a number of exhibits,[5] including: an excerpt from the Restrictive Covenants; a February 17, 2011 "Act of Servitude of Ingress and Egress," in which Waterfront Developers, L.L.C., the developers of Point Carr Estates Subdivision, granted a non-exclusive servitude of ingress and egress for residential purposes in favor of Lot 9 and the Warrens as owners of Lot 9; the Warren purchase agreement, including the amendment removing the predication clause; the petition in the Warren suit; the Troncosos' original and first supplemental and amending petitions in the HOA suit; the December 30, 2013 partial summary judgment in the Warren suit, along with the trial court's written reasons for judgment; Rodrigue's expert affidavit, prepared in connection with the Warren suit, attesting to his opinion that the Troncosos did not have merchantable title to Lot 9 on the necessary dates for three reasons, two of which were unrelated to the Restrictive Covenants,[6] and the third being that the "series of recorded instruments" (the Restrictive Covenants and the Partial Release), were "suggestive of litigation;"[7] excerpts from Rodrigue's deposition, in which he opined that Lot 9 was not encumbered by the Restrictive Covenants because the Troncosos did not sign the Restrictive Covenants;[8] the October 10, 2011 Consent

_____

[5] Many of the exhibits filed by McElveen and Tedesco in support of their motion are not included in the exclusive list of documents that may be filed in support of a motion for summary judgment pursuant to La. C.C.P. art. 966(A)(4), nor have they been properly authenticated by an affidavit or deposition to which they are attached. See La. C.C.P. art. 966, comments – 2015, comment (c). However, it does not appear that the Troncosos objected to the filing of the documents, so the trial court did not err in considering those documents in support of the motion. See La. C.C.P. art. 966(D)(2) (the court "shall consider any documents to which no objection is made").

[6] Rodrigue's first two reasons for concluding that the Troncosos did not have merchantable title were: (1) The 2002 act wherein the Troncosos purchased Lot 9 listed the owner/seller as "Waterfront Development, LLC," when the correct name was actually "Waterfront Developers, LLC;" and (2) The developer of Point Carr Estates Subdivision, Waterfront Developers, LLC, had never transferred the streets to the HOA.

[7] Rodrigue's third reason for concluding that the Troncosos did not have merchantable title was that the Restrictive Covenants and Partial Release filed in the public records against Lot 9 were "suggestive of litigation." Rodrigue's reasons for concluding that the recorded instruments were suggestive of litigation were that not all lot owners had signed the Restrictive Covenants to impose the restrictions; some co-owners in indivision (whose spouses signed the Restrictive Covenants) did not sign, resulting in only a one-half interest in those lots being encumbered; and the Partial Release was insufficient to release Lot 9 from the Restrictive Covenants because it was not signed by the owners of a majority of the lots, as required by the Restrictive Covenants, nor even by all of the original signatories to the Restrictive Covenants.

[8] During Rodrigue's deposition, he discovered that he had made an error in preparing his affidavit. While reviewing the recorded instruments, Rodrigue had mistaken Tedesco's signature for that of Kenneth Troncoso. As a result, Rodrigue's affidavit assumed as fact that Kenneth Troncoso had signed the Restrictive Covenants as the owner of Lot 9, but noted that Gail Troncoso, who owned an undivided one-half interest in Lot 9, had not signed. Rodrigue considered the fact that only one spouse signed the act to encumber the property to be suggestive of litigation. Once he discovered the Kenneth Troncoso did not sign the Restrictive Covenants, Rodrigue testified that "Lot 9 was not encumbered" by the Restrictive Covenants, but did not say whether this new information changed his opinion on the merchantability of the title to Lot 9 vis-à-vis the recorded instruments.

Judgment in the HOA suit; McElveen's affidavit, attesting that he only signed the Restrictive Covenants as an individual for the purpose of encumbering his own property and denying any responsibility for the drafting of the document or obtaining other lot owners' signatures on the document; the Warrens' motion for partial summary judgment in the Warren suit, along with their statement of undisputed material facts and their memorandum in support; Kenneth Troncoso's affidavit prepared in connection with the Warren suit, in which he attested that he and his wife tendered "merchantable insured title" to the Warrens; the Troncosos' memorandum in opposition to the Warrens' motion for partial summary judgment, in which they argued that a genuine issue of material fact existed as to whether the title to Lot 9 was merchantable; certain exceptions filed by McElveen in the HOA suit, as well as the August 31, 2015 judgment sustaining his exception of no cause of action on attorney fees; the March 15, 2002 act of sale whereby the Troncosos acquired Lot 9 from the developer; and Tedesco's affidavit, attesting that she only signed the Restrictive Covenants as an individual for the purpose of encumbering her own property, that she signed the document before other signatures were obtained and with the understanding that all other required signatures would be obtained prior to filing in the public records by the attorney responsible for drafting the document, and denying any responsibility for drafting the document, hiring the attorney who drafted the document, obtaining other lot owners' signatures on the document, or recording the document.

The Troncosos opposed McElveen and Tedesco's motion for summary judgment and filed the following exhibits[9] with their opposition: the Restrictive Covenants; the HOA By-Laws; the Consent Judgment in the HOA suit; the March

---

[9] Although the Troncosos' opposition to the motion for summary judgment lists Kenneth Troncosos' affidavit as "Exhibit E," and the opposition memorandum refers to the affidavit in argument, this affidavit was not filed in the record with the opposition.

10

9, 2011 amicable demand letter; excerpts from Yvette and Richard Warren's deposition testimony about their desire to purchase a lot that was not subject to restrictive covenants and the role of the Restrictive Covenants in their decision not to purchase Lot 9; and excerpts from McElveen's deposition, in which he stated that he did not recall being told what was going to be done with the Restrictive Covenants after he signed them, although he "understood that it required some legal filing."

After a hearing, McElveen and Tedesco's motion for summary judgment was granted, dismissing the Troncosos' claims against them.[10] The Troncosos initially filed a motion for devolutive appeal of the September 25, 2019 judgment dismissing their claims against McElveen and Tedesco, but that appeal was later dismissed as abandoned.

On August 16, 2021, the trial court[11] continued and reset the trial on the merits for November 23 and 24, 2021, and ordered the parties to file any motions and exceptions in sufficient time to be heard on November 4, 2021.

On September 17, 2021, the HOA and the remaining individual defendants filed a motion for summary judgment, which was set to be heard on November 4, 2021. The motion was a "me too" motion,[12] in which the defendants stated in their memorandum that they "adopt the Memorandum in Support of [McElveen and Tedesco's] Motion for Summary Judgment, together with all exhibits, *in extenso*." The defendants argued that the September 25, 2019 judgment dismissing the Troncosos' claims against McElveen and Tedesco had become final, and the trial

---

[10] Although the trial court issued written reasons for judgment at the Troncosos' request, these written reasons consisted strictly of a statement that the trial court "adopts the statement of the case prepared by plaintiffs [sic] in support of the motion for summary judgment," followed by a copy-and-paste of the "Statement of the Case" and "Statement of Uncontested Facts" from McElveen and Tedesco's memorandum and a statement that the trial court finds that the supporting documents "show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law."

[11] John A. Keller took office January 4, 2021 as the District Judge for Division "D" of the Twenty-Second Judicial District Court following Judge Peter J. Garcia's death in March 2020.

[12] See *CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 2019-0731, p. 5, n. 2 (La.App. 1 Cir. 7/2/19), 2019WL2865359, at *2, n. 2 (unpublished), *writ denied*, 2019-01229 (La. 11/19/19), 282 So.3d 1071 (a "me too" motion is a motion that attempts to adopt and incorporate the evidence, authorities, and arguments set forth in another motion simply by reference thereto).

11

court's reasons for judgment in that matter, including findings of fact, were the law of the case. The defendants filed the affidavits of the remaining individual defendants in support of their motion for summary judgment. The affidavits of Edgett, Bearden, Richard and Lesley Capdeboscq, and Childress each stated that he/she executed the Restrictive Covenants individually, for the sole purpose of encumbering his/her own property, and denied any personal responsibility for the drafting or recording of the Restrictive Covenants.

The Troncosos opposed the defendants' motion. In their opposition, the Troncosos objected to the defendants' adoption of McElveen and Tedesco's motion for summary judgment and memorandum, arguing that there is no procedure found in the Louisiana Code of Civil Procedure to satisfy the requirements of La. C.C.P. art. 966 by adopting the pleadings of other parties. The Troncosos argued that adopted pleadings are not among the exclusive list of documents that may be filed in support of a motion for summary judgment under La. C.C.P. art. 966(A)(4). They also objected to the defendants' motion on the grounds that it does not comply with Rule 9.10(a) of the Louisiana District Court Rules because it does not contain a list of material facts and essential legal elements or references to documents proving such facts. Further, the Troncosos filed the following exhibits in opposition to the defendants' motion for summary judgment: the affidavit of Kenneth Troncoso, stating that the Restrictive Covenants were the reason they were unable to cause the Warrens to purchase Lot 9 and that the defendants refused his request to voluntarily release Lot 9 from the Restrictive Covenants in order to allow the Warren sale to proceed; an excerpt of the Restrictive Covenants; copies of the sales or transfers whereby McElveen and his wife, Tedesco and her husband, Bearden and his wife,

12

Edgett and his ex-wife, and Childress each acquired ownership in their individual lots in Point Carr Estates Subdivision; and the Consent Judgment in the HOA suit.[13]

The Troncosos also filed a motion for partial summary judgment on September 20, 2021, which was set for hearing along with the defendants' motion on November 4, 2021. The Troncosos' motion sought summary judgment solely on the issue that the Restrictive Covenants constituted an unlawful encumbrance on Lot 9. In support of their motion for partial summary judgment, the Troncosos filed the Restrictive Covenants; the HOA By-Laws; a copy of a Geoportal Map dated September 14, 2021, showing Point Carr Estates Subdivision, with lot numbers handwritten on the individual lots; the Partial Release; the Consent Judgment in the HOA suit; a July 27, 2020 Cash Sale whereby the Troncosos sold Lot 9 to Shannon and Christopher Bell for $95,000.00, which states that the sale is subject to the Restrictive Covenants filed in the public records in 2008; a subdivision plat of Point Carr Estates Subdivision; an undated document entitled "Frequently Asked Questions" on St. Tammany Parish Government letterhead, addressing enforcement of restrictive covenants, along with an undated copy of what appears to be an ordinance titled "Sec. 40-074.01, Parish Enforced Subdivision Restrictions and/or Covenants," setting forth certain required restrictions for parish-approved subdivisions that would be included on any final subdivision plat, run with the land, and be enforced by the Parish Planning Commission; the March 15, 2002 act of sale, including attachments, whereby the Troncosos acquired Lot 9; the HOA Articles of Incorporation executed by Richard Capdeboscq, Jr. as incorporator; and the trial court's February 5, 2020 written reasons for judgment issued in connection with the summary judgment in favor of McElveen and Tedesco.[14]

---

[13] Although most of the exhibits filed by the Troncosos with their opposition are not admissible summary judgment evidence, the defendants did not file a reply memorandum raising an objection to the exhibits pursuant to La. C.C.P. art. 966(D)(2), so those exhibits must be considered by the court.

[14] Again, the defendants did not object to any of the Troncosos' exhibits filed in support of their motion, and those exhibits must be considered by the court pursuant to La. C.C.P. art. 966(D)(2). The Troncosos' motion for partial

In opposition to the Troncosos' motion for partial summary judgment, the defendants argued that Judge Garcia's written reasons for judgment issued in connection with McElveen and Tedesco's motion for summary judgment contained findings of fact that are binding on the court as the law of the case and that preclude summary judgment in favor of the Troncosos. The defendants did not file any supporting documents in opposition to the Troncosos' motion for partial summary judgment.[15]

The hearing on both motions for summary judgment was held on November 4, 2021. Although the Troncosos had raised objections pursuant to La. C.C.P. art. 966(D)(2) to the defendants' motion for summary judgment and opposition to the plaintiffs' motion for partial summary judgment, the trial court did not rule on the objections or specifically state in writing or on the record which documents, if any, he held to be inadmissible or declined to consider.[16]

After hearing arguments and reading the prior trial court decisions, the trial court ruled in favor of the defendants. In ruling, the court found, based on Rodrigue's expert legal opinion, that the recording of the Restrictive Covenants without the Troncosos' signature did not create an encumbrance on Lot 9, and therefore the Troncosos failed to establish any damages. The trial court also found

---

summary judgment lists two exhibits purportedly filed in support of the motion that do not appear in the record along with their motion: (1) "EXHIBIT A – Sales of Lots and boar [sic] Slips in Point Carr Estates Subdivision;" and (2) "EXHIBIT 12 – Affidavit of Kenneth Troncoso." Although those listed exhibits appear to have been filed in the record with the Troncosos' opposition to the defendants' motion for summary judgment, they cannot be considered in support of their motion, since they were not actually filed with it. See Duran v. Roul's Deli Juicy Juicy, L.L.C., 2021-1600, p. 4 (La.App. 1 Cir. 8/8/22), 348 So.3d 735, 737 (a court may consider only those documents specifically filed in support of or in opposition to a motion for summary judgment, even if those documents appear elsewhere in the record).

[15] The Troncosos filed a reply to the defendants' opposition, objecting to the defendants' failure to comply with La. C.C.P. art. 966 and Rule 9.10 of the Louisiana District Court Rules in their opposition. The Troncosos argue that the opposition memorandum failed to include a list of the material facts that the defendants contend are genuinely disputed and to reference documents proving each such fact.

[16] The provisions of La. C.C.P. art. 966(D)(2) requiring that the trial court "shall consider all objections prior to rendering judgment" and "shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider" are mandatory. James as Co-Trustees of Addison Family Trust v. Strobel, 2019-0787, p. 10 (La.App. 1 Cir. 6/24/20), 2020WL3446635, at *5; see also La. C.C.P. art. 5053 (the word "shall" is mandatory). Although it was error for the trial court to proceed with the motions without ruling on the Troncosos' objections, given our disposition of this matter, this error is of no moment.

14

that there was no liability of the individual defendants, based on their affidavits stating that they only signed the Restrictive Covenants and were not responsible for drafting or recording the Restrictive Covenants. A judgment was signed granting the defendants' motion for summary judgment, dismissing the Troncosos' suit, and denying the Troncosos' motion for partial summary judgment.[17] The trial court issued written reasons for judgment at the request of the Troncosos, in which he found that the Troncosos failed to provide proof that any of the remaining individual defendants was responsible for the drafting or recording of the Restrictive Covenants, and further that the Troncosos failed to provide proof of an encumbrance or damages resulting therefrom. The Troncosos filed a motion for new trial on a number of grounds, including the defendants' failure to comply with the requirements of La. C.C.P. art. 966 and District Court Rule 9.10 and the trial court's misapplication of the law of the case doctrine, which was denied. This appeal followed.

On appeal, the Troncosos argued that the trial court erred in considering the defendants' motion for summary judgment in spite of their objections to the defendants' failure to comply with the procedural requirements for motions for summary judgment; in finding that the invalid restrictions did not affect the title to Lot 9; in finding that no liability existed on the part of the individual defendants; and in finding that the Troncosos offered no proof of damages in opposition to the defendants' motion for summary judgment.

## DISCUSSION

Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be

---

[17] The judgment signed by the trial court on December 14, 2021 lacked proper decretal language required for a final judgment. In accordance with La. C.C.P. arts. 1918(A), 1951, and 2088(A)(12), this matter was remanded to the trial court by an August 17, 2022 Interim Order for the issuance of an amended judgment correcting deficiencies in the December 14, 2021 judgment. The appellate record was thereafter supplemented with an amended judgment issued by the trial court on August 29, 2022.

15

construed to accomplish these ends. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). However, a summary judgment may be rendered only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F).

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *In re Succession of Beard*, 2013-1717, p. 10 (La.App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. See *Hines v. Garrett*, 2004-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). A genuine issue is one as to which reasonable persons could disagree. However, if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 2004-0806 at p. 1, 876 So.2d at 765-66. A fact is "material" when its existence or nonexistence is essential to the plaintiff's cause of action under the applicable theory of recovery. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. Any doubt as to a dispute regarding an issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. *Id.*

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the

adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Although factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. *Guillory v. The Chimes*, 2017-0479, p. 4 (La.App. 1 Cir. 12/21/17), 240 So.3d 193, 195. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Larson v. XYZ Insurance Company*, 2016-0745, p. 7 (La. 5/3/17), 226 So.3d 412, 417.

The mover on a motion for summary judgment can meet its burden of proof on the motion by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). This list is exclusive, and documents not included in the exclusive list may not be filed in support of or opposition to a motion for summary judgment unless they are properly authenticated by an affidavit or deposition to which they are attached. La. C.C.P. art. 966, comments – 2015, comment (c). The court may only consider those documents filed in support of or in opposition to the motion for summary judgment. La. C.C.P. art. 966(D)(2); see also *Viering v. Liberty Mut. Ins. Co.*, 2017-0204, p. 8 (La.App. 1 Cir. 9/27/17), 232 So.3d 598, 603, *writ denied*, 2017-1821 (La. 12/15/17), 231 So.3d 637 (observing that since the 2015 amendments to La. C.C.P. art. 966, parties must attach all documents in support of or in opposition to the motion for summary judgment to their motion or opposition). Oral testimony may not be allowed at the hearing, and the court cannot consider

17

other materials in the record. La. C.C.P. art. 966, comments – 2015, comment (c) and (k); *James*, 2019-0787 at p. 8; 2020WL3446635, at *4. The mover's supporting documents must prove the essential facts necessary to carry the mover's burden. *Horrell v. Alltmont*, 2019-0945, p. 6 (La.App. 1 Cir. 7/31/20), 309 So.3d 754, 758.

As noted above, the HOA and remaining individual defendants only filed the affidavits of Edgett, Bearden, Richard and Lesley Capdeboscq, and Childress with their motion for summary judgment. Although they attempted, by a statement in their memorandum in support of their motion, to adopt *in extenso* the motion, memorandum, and exhibits filed in this matter in 2019 by McElveen and Tedesco, these materials elsewhere in the record cannot be considered on summary judgment. See *James*, 2019-0787 at pp. 7-8, 2020WL3446635 at *3-4 (where plaintiffs filed no documents or evidence in support of their motion for summary judgment on their cross-claim, but only a "Statement of Undisputed Facts" referencing documents filed in the record as exhibits on their motion for summary judgment on the main demand, the plaintiffs failed to carry their burden on the motion because only documents filed in support of or in opposition to the motion may be considered); see also *Horrell*, 2019-0945 at pp. 8-10, 309 So.3d at 759-761 (request in movers' memorandum that the court take judicial notice of court decisions in prior litigation between the parties did not satisfy the requirements of La. C.C.P. art. 966(A)(4); the judgments and suit record from the prior litigation must be filed with the motion for summary judgment in order for the court to consider them); *Forstall v. City of New Orleans*, 2017-0414, pp. 8-10 (La.App. 4 Cir. 1/17/18), 238 So.3d 465, 471-472 (where the mover failed to attach any documents in support of its motion for summary judgment and merely referenced evidence located elsewhere in the record, and La. C.C.P. art. 966(D)(2) precluded the trial court from considering other material in the record for purposes of ruling on the motion for summary judgment, the mover failed to meet its burden of establishing a prima facie case that there were no genuine issues of material fact);

18

and *Davis v. Hixson Autoplex of Monroe, L.L.C.*, 51,991, pp. 7-9 (La.App. 2 Cir. 5/23/18), 249 So.3d 177, 182-183 (reference to documents existing elsewhere in the record is not sufficient - the documents must specifically be filed in support of or in opposition to the motion for summary judgment in order for the court to consider them). Because the exhibits filed by McElveen and Tedesco in 2019 were not filed by the HOA and remaining individual defendants with their motion for summary judgment as required by La. C.C.P. art. 966, those exhibits were not before the court on this motion. Only the affidavits actually filed with the defendants' motion may be considered in determining whether the defendants satisfied their initial burden on summary judgment.

In their memorandum in support of their motion for summary judgment, the defendants raised three grounds for the court to grant summary judgment. They argued that the Troncosos would be unable to prove that the recording of the Restrictive Covenants was the cause of their inability to sell their home; that the Troncosos would be unable to prove any damages resulting from the recording of the Restrictive Covenants; and that the Troncosos' claims are barred by judicial estoppel as a result of a contradictory argument in the Warren suit. The supporting documents filed with the defendants' motion (the affidavits of the remaining individual defendants) only contained attestations that the remaining individual defendants executed the Restrictive Covenants individually, for the sole purpose of encumbering his/her own property, and denied any personal responsibility for the drafting or recording of the Restrictive Covenants. These affidavits are insufficient to satisfy the movers' initial burden on the motion for summary judgment, which required them to point out an absence of factual support for the Troncosos' claims that the recording of the Restrictive Covenants caused their inability to sell their home or any other damages, or to prove that the Troncosos were judicially estopped from raising their claims in the HOA suit based on their allegedly contradictory

claims in the Warren suit. Because the defendants failed to file any evidence in support of their motion that would satisfy their initial burden with regard to the issues actually raised in the motion, the trial court erred in granting summary judgment in favor of the defendants.

The trial court's oral and written reasons for judgment reveal that it also granted summary judgment in favor of the individual defendants on the issue of liability; however, that issue was not raised in the defendants' motion for summary judgment.[18] As previously noted, a summary judgment may only be rendered or affirmed as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F). A summary judgment decided on issues other than those raised by the parties is legally erroneous and must be reversed. See *Leet v. Hospital Service District No. 1 of East Baton Rouge Parish*, 2018-1148, p. 13 (La.App. 1 Cir. 2/28/19), 274 So.3d 583, 591. The purpose of the restriction codified in La. C.C.P. art. 966(F) is to inform the opponent of the summary judgment motion of the elements on which there allegedly is no genuine issue of material fact and to avoid surprise. *Cutrone*, 2019-0896 at p. 9, 293 So.3d at 1215-16; see also Louisiana District Court Rules Rule 9.10 (outlining the requirement for a memorandum in support of a motion for summary judgment). Failure to enforce La. C.C.P. art. 966(F) results in a non-mover on a motion for summary judgment being required to respond to the motion by submitting evidence that it will be able to carry its burden of proof as to all essential elements of his claim, regardless of whether a particular element of his claim was placed at issue by the motion or not. *Cutrone*, 2019-0896 at p. 9, 293 So.3d at 1216. Requiring a non-mover to essentially try his entire case

---

[18] Although appellate courts review judgments, not reasons for judgment, and afford no deference to the trial court's underlying reasoning for its judgment when conducting de novo review of a summary judgment, those reasons may be relevant when determining whether a trial court exceeded its authority by rendering summary judgment as to issues not set forth in the motion under consideration by the court. See La. C.C.P. art. 966(F); *Libertas Tax Fund I, LLC v. Laiche*, 2021-0330, pp. 9-10 n. 6 (La.App. 1 Cir. 12/22/21), 340 So.3d 236, 242-43 n. 6, *writ denied*, 2022-00160 (La. 4/12/22), 336 So.3d 82, citing *Cutrone v. English Turn Property Owners Association, Inc.*, 2019-0896, pp. 9-10 (La.App. 4 Cir. 3/4/20), 293 So.3d 1209, 1215-16.

to the court in response to a motion for summary judgment is contrary to the stated purpose of the summary judgment procedure, i.e., to secure the just, speedy, and inexpensive determination of every action. See La. C.C.P. art. 966(A)(2). Because the issue of liability was not raised in the defendants' motion, summary judgment may not be rendered or affirmed based on that issue, regardless of whether the supporting documents filed with the motion would satisfy the individual defendants' burden for summary judgment on that issue.[19] Therefore, to the extent the trial court granted summary judgment in favor of the individual defendants based on the issue of liability, that summary judgment is also reversed.

The trial court judgment on appeal also denies the Troncosos' motion for partial summary judgment. The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. However, where there are cross-motions for summary judgment raising the same issues, this court can review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. *Waterworks District No. 1 of Desoto Parish v. Louisiana Department of Public Safety & Corrections*, 2016-0744, p. 3, n. 1 (La.App. 1 Cir. 2/17/17), 214 So.3d 1, 3, n. 1, *writ denied*, 2017-0470 (La. 5/12/17), 219 So.3d 1103. Nevertheless, in their motion for appeal, the Troncosos specifically requested and were granted an appeal of the portion of the judgment granting the defendants' motion for summary judgment. Their motion for appeal further stated that the portion of the judgment denying their

---

[19] Although the trial court seemed to find that the affidavits of the remaining individual defendants were sufficient to carry the defendants' burden on summary judgment as to the issue of their individual liability, consideration of this issue on summary judgment is precluded by La. C.C.P. art. 966(F). Consistent with the purpose of that provision, it would amount to an unfair surprise for the court to grant summary judgment on an issue that was not raised, without giving any warning to the Troncosos as to the issues that needed to be opposed on summary judgment. For instance, if the defendants in this matter had properly raised the issue of liability in their motion for summary judgment and supported the motion with the affidavits of the individual defendants, in which they deny any responsibility for the drafting or filing of the recorded instruments, then the Troncosos, having been informed that the issue of the individual defendants' liability was before the court, could have opposed the motion by filing such supporting evidence as the Partial Release, in which the HOA and some (but not all) of the remaining individual defendants stated that they "caused [the By-laws] and [Restrictive Covenants] to be recorded in the public records for St. Tammany Parish on September 26, 2008." However, with the defendants raising only the issues of damages and judicial estoppel in their motion, the Troncosos had no notice that they should oppose the motion by filing proof of the defendants' responsibility for the recording of the Restrictive Covenants in the public records. The summary judgment by ambush on the issue of liability in this matter is precisely what La. C.C.P. art. 966(F) is intended to preclude.

21

own motion for partial summary judgment "is interlocutory and not subject of direct appeal." Given the fact that the Troncosos did not request an appeal the denial of their motion or assign error to the denial, as well as the fact that the two motions before the court in this matter were not necessarily cross-motions for summary judgment raising the same issues, we decline to review the denial of the Troncosos' motion for partial summary judgment.

Given our disposition of this matter, we pretermit discussion of the Troncosos' remaining assignments of error. Our ruling in this matter does not prevent either party from filing another motion for summary judgment, with appropriate documentary support. See *Forstall*, 2017-0414 at p. 11, n. 12, 238 So.3d at 473, n. 12.

## CONCLUSION

The August 29, 2022 judgment of the trial court is reversed insofar as it grants the defendants' motion for summary judgment and dismisses the plaintiffs' case. Costs of this appeal are assessed to defendants, Point Carr Estates Subdivision Homeowners Association, Richard Capdeboscq, Jr., Lesley Capdeboscq, Patricia Childress, William Edgett, and Michael Bearden.

**REVERSED.**